489 S.E.2d 666

**Sonya Lynn PITT, Respondent/Appellant,**

v.

**Brian Todd OLDS, Appellant/Respondent.**

**Sonya Lynn PITT, Appellant,**

v.

**Brian Todd OLDS, Respondent.**

**No. 2692.**

Court of Appeals of South Carolina.

Heard April 9, 1997

Decided June 30, 1997.

Rehearing Denied Sept. 3, 1997.

514

David L. DeVane; and D. Mark Stokes, Charleston, for appellant/respondent.

Gregg Myers, of Wise, Pratt–Thomas, Pearce, Epting & Walker, Charleston, for respondent/appellant.

Guardian ad Litem: Cindy M. Floyd, North Charleston.

HEARN, Judge:

These are consolidated cross-appeals from an action for change of custody. The trial judge, Judge Bridges, denied Sonya Lynn Pitt's (Mother's) request to remove the parties' child to Arizona and Brian Todd Olds' (Father's) request for sole custody, leaving the parties' daughter in their joint custody with Mother having primary custody. Both parties appeal from this order.

Mother also appeals from subsequent orders issued by Judge Sutherland and Judge Segars–Andrews. We affirm in part, reverse in part, and remand.

### FACTS

Mother and Father were married in 1988. They have one daughter, Ashton, born in 1988. They divorced on the ground of one year's separation in 1991. In March 1993, the parties entered into an agreement for joint custody of Ashton with primary custody vested in Mother. Father was awarded very liberal visitation. The agreement further provided that "either party is restrained and enjoined from removing the child out of the State of South Carolina on a permanent basis without first obtaining leave of the Court."

Both Mother and Father have since remarried. Mother married George Pitt, age forty-nine, in April, 1994. Father married Diane Olds, age 20, shortly after Mother instituted this action.

In May 1994, Mother brought this action seeking to remove Ashton to Arizona so they could be with her new husband in the state where he has resided since 1979. Father counterclaimed, seeking sole custody, child support, and attorney's fees and costs.

At the hearing before Judge Bridges, Mother testified she planned to stay home and care for Ashton in Arizona. She testified that if she were permitted to move to Arizona, she would encourage Ashton's relationship with Father through frequent visits, phone calls, letters, and videotapes. Mother was willing for Father to have lengthy visitation with Ashton

during the summer, as well as at Christmas and during spring break. She was also willing to accept a decrease in Father's child support obligation and to pay for some of Ashton's airplane tickets to and from South Carolina to visit Father.

Dr. Charles B. Saylor, a licensed clinical psychologist and a certified forensic psychologist, was hired by Mother to evaluate the potential for trauma to Ashton if they were separated. Dr. Saylor testified that Ashton is most strongly attached to Mother. According to him, the child derives most of her feelings of security and comfort from her relationship with Mother. He further testified that Ashton was very excited and positive about moving to Arizona. Dr. Saylor stated the greatest risk of trauma to Ashton is if she is separated from Mother. He did not interview Father, nor did he do a comparison of the two households.[1]

Father is a full-time student at the College of Charleston who works part-time. Many members of his extended family live in the "tri-county" area. He testified he could not afford transportation to Arizona or afford lodging or meals once there.

It is undisputed that Father has been very involved in Ashton's life. He has attended parent conferences and PTA meetings, and taken her to church. He testified he wants to continue to be an active participant in Ashton's life and does not feel that he will be able to do so if she moves to Arizona. Father does not believe that Mother's new marriage is stable or that Mother has been acting in Ashton's best interests.

Harriett H. Lent, a counselor hired by Father, saw Ashton twice for formal counseling sessions and had several other informal conversations with Ashton in her office. Father initially contacted Lent after Ashton had become very upset while visiting at his house and said that she wanted her mother. Lent found that Ashton's reaction was caused by nervousness and post-traumatic stress, occasioned in part by a recent hospitalization for a brief illness. She also testified that Ashton was concerned about the upcoming custody hearing.

---

1. Father admitted that he was invited to participate in a full custodial evaluation with Dr. Saylor but declined to do so.

Lent stated she found Father to be trustworthy, stable, and mature. She opined that it would be very damaging to Ashton to move to Arizona and that the move was not in Ashton's best interests. Lent stated she was not asked to perform a full custodial evaluation.

The Guardian *ad litem*, Cindy M. Floyd, while not making a custody recommendation in favor of either parent, testified it would be in Ashton's best interest to stay in South Carolina. Floyd testified that she felt George Pitt had not been completely truthful with her during their interview. She further stated she had concerns about the future of Mother's marriage to Pitt because of the long distance nature of their relationship. She also testified that Ashton and Diane Olds seemed to get along well.

Floyd admitted she was influenced by the fact that Ashton has many family members and friends in the area who will "keep an eye out for her." Significantly, Floyd admitted that she had not seen Ashton with her Mother, but had only met with Ashton while she was with Father.

The trial judge issued a final order finding Mother had failed to carry her burden of proof that it would be in Ashton's best interest to move to Arizona. Judge Bridges also denied Father's counterclaim for sole custody, finding the parties should continue in their joint custody agreement, with primary custody vested in the Mother. Both parties appealed from her decision.

In May 1995, Mother petitioned the family court for an emergency hearing regarding modification of the parties' summer visitation schedule. Mother sought to have Father's summer visitation modified from two weeks each month to six consecutive weeks, so that Ashton would not have to travel back and forth from Arizona to South Carolina so frequently during the summer. Mother also filed a new action seeking to remove Ashton to Arizona and for modification of the visitation schedule. Father filed a motion to dismiss or to stay that complaint, arguing that pursuant to Rule 204, SCACR, the appellate court had exclusive jurisdiction over the issues addressed in Mother's complaint.

On June 1, 1995, Judge Segars–Andrews heard and denied Mother's motion for modification of visitation finding that

Mother was seeking relief based on changed circumstances and was therefore required to file a new summons and complaint. Judge Segars–Andrews also found that an emergency hearing in the case was not justified and awarded Father $200 in attorney fees.

On June 15, 1995, Judge Sutherland heard Father's motion to dismiss Mother's new action, finding the family court did not have jurisdiction because "virtually identical" issues were on appeal to the supreme court, and that Mother's complaint did not state facts sufficient to allege a cause of action. Judge Sutherland awarded Father $750 in attorney fees.

In June 1995, Mother filed a "motion to deem an issue remanded" requesting the South Carolina Supreme Court to deem remanded to the trial court, in light of changed circumstances, the issues of Ashton's removal from the jurisdiction and adjustments to Father's visitation. This motion was denied on July 12, 1995.

## I. Mother's Appeal

Mother asserts that numerous factual findings by Judge Bridges were without evidentiary support and focused undue and erroneous emphasis on Mr. Pitt. Essentially, Mother argues that Judge Bridges' order had the effect of penalizing her for marrying Mr. Pitt prior to obtaining court approval to remove Ashton from the state. She also asserts the court erred in applying a presumption against removing a child from the State. Mother also argues Judge Bridges erred in denying her a new trial when both parties initially requested this relief.

Mother also asserts Judge Segars–Andrews erred in not modifying the summer visitation schedule so as to allow Father six consecutive weeks of visitation rather than two weeks each month, and in awarding Father $200 in attorney fees.

Finally, Mother asserts Judge Sutherland erred in determining the family court lacked jurisdiction because of the pending appeal, in considering matters outside the pleadings on Father's motion to dismiss, and in awarding Father $750 in attorney fees.

## Custody

■■■ We agree with Mother's assertion that the trial judge erred in refusing her request to move Ashton to Arizona. While there is a presumption against removing a child from the state, the power to require a parent to live in a particular area should be exercised sparingly. *VanName v. VanName*, 308 S.C. 516, 419 S.E.2d 373 (Ct.App.1992).

In *McAlister v. Patterson*, 278 S.C. 481, 299 S.E.2d 322 (1982), the Supreme Court upheld a family court judge's refusal to allow a Mother to relocate outside the state with the parties' child. There, the father had provided the mother with over $200,000 in assets, all of which were his separate property, in exchange for her agreement to remain in Laurens until their son became emancipated. *Id.* at 482, 299 S.E.2d at 323. The mother and her new husband decided to move to Washington, D.C. because he was dissatisfied with his job in Laurens. *Id.*

The trial judge restrained her from removing the parties' young son from the Laurens area, and held custody should be granted to the father in the event she moved. He based this decision, at least in part, on the fact that the minor child was a male who needed frequent contact with his father. *Id.* The trial judge also noted, "there is no pressing need existing which would justify the proposed move." *Id.* The Supreme Court agreed with the trial judge that the child's best interest would be advanced by his continued residence in Laurens County. *Id.* at 483, 299 S.E.2d at 323.

Since the supreme court's decision in *McAlister*, however, this court has recognized that the presumption against removal should be applied carefully. *See VanName v. VanName*, 308 S.C. 516, 519, 419 S.E.2d 373, 375 (Ct.App.1992); *Eckstein v. Eckstein*, 306 S.C. 167, 169, 410 S.E.2d 578, 579 (Ct.App. 1991); *Sealy v. Sealy*, 295 S.C. 281, 284, 368 S.E.2d 85, 87 (Ct.App.1988).[2]

---

**2.** While it is not the province of this court to expand upon the standard set forth in *McAlister*, we note that several other jurisdictions have adopted specific factors to be considered by the family court in determining if removal should be allowed. *See, e.g., Tremblay v. Tremblay*, 638 So.2d 1057, 1058 (Fla.Dist.Ct.App.1994) (whether the move would likely improve the general quality of life for both the primary residential

There is no question but that Father has been actively involved in Ashton's life. There is also no question, however, that Mother has been the primary custodial parent at least since the parties' initial agreement was approved in August of 1991.

Here, Mother's request to move with Ashton to Arizona was based solely on her wish to live with her husband in his state of residence. Given the close relationship between Ashton and her mother and the absence of any evidence to suggest that Mother's desire to relocate to Arizona is in any way vindictive or that she is deliberately attempting to interfere with Father's close relationship with Ashton, we believe the trial judge erred in refusing her request. Unlike the mother in *McAlister*, we believe Mother's reasons for moving to Arizona—to join her new husband in the state where he has resided for many years—is a "pressing need." While Ashton's relationship with her father will no doubt suffer, Judge Bridges apparently found she would suffer more by being separated from her mother. This conclusion is supported by the evidence.

Therefore, we agree with Judge Bridges that Father failed to establish it would be in Ashton's best interests for custody to be transferred to him. We disagree, however, with her decision that Ashton should not be permitted to move to Arizona with her Mother. Other courts have recognized that a decision to remarry is a legitimate reason for which to seek a child's removal from the state. *See, e.g., Gancas v. Schultz,* 453 Pa.Super. 324, 683 A.2d 1207, 1209 (1996); *Aaby v. Strange,* 924 S.W.2d 623, 624 (Tenn.1996).

spouse and the child; whether the motive for seeking the move is to defeat visitation; whether the custodial parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements; and whether the cost of transportation is financially affordable by one or both of the parents); *Gancas v. Schultz,* 453 Pa.Super. 324, 683 A.2d 1207 (1996) (the potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a whim on the part of the custodial parent; the integrity of the motives of both the custodial and noncustodial parent in either seeking the move or seeking to prevent it; and the availability of realistic substitute visitation arrangements which will foster adequately an ongoing relationship between the child and the noncustodial parent).

Accordingly, we affirm that portion of Judge Bridges' order which permitted Mother to retain primary custody of Ashton and reverse her decision not to allow Mother to relocate to Arizona.[3]

### Judge Segars–Andrews' Order

Mother also argues Judge Segars–Andrews erred in refusing to modify the summer visitation schedule and in awarding attorney fees to Father in the sum of $200. We disagree.

■ Following the issuance of Judge Bridges' order, both parties filed rather extensive "motions for reconsideration." Nowhere in Mother's five-page motion is there any mention of a modification of the summer visitation schedule. Her motion to modify summer visitation, filed some four months after the issuance of Judge Bridges' order upon reconsideration, was filed under the same civil action number as the main custody action. Quite clearly, the family court's jurisdiction over matters involved in the custody action ended with the filing of an appeal from Judge Bridges' order upon reconsideration. *See* Rule 204, SCACR ("Upon service of the notice of appeal, the appellate court shall have exclusive jurisdiction over the appeal. . . ."). Accordingly, Judge Segars–Andrews properly ruled that the relief sought by Mother, based upon an alleged change of circumstances, should be brought in a new action before the family court.

■ Moreover, the award of attorney fees rests within the sound discretion of the family court judge. *Ariail v. Ariail*, 295 S.C. 486, 369 S.E.2d 146 (Ct.App.1988). We hold that Judge Segars–Andrews did not abuse her discretion in requiring the Mother to pay $200 in fees to Father's attorney who was required to defend against an improper emergency motion for modification.

### Judge Sutherland's Order

Mother also appeals from the order of Judge Sutherland, issued shortly after the issuance of Judge Segars–Andrews' order, which dismissed Mother's new action for relief, filed in

---

**3.** In light of our resolution of the custody issue, we need not reach Mother's numerous other assignments of error to Judge Bridges' order.

May 1995, and ordered her to pay $750 in attorney fees to Father. She argues Judge Sutherland erred in considering matters outside the pleadings, in determining the court lacked jurisdiction to entertain the action, and in awarding Husband attorney fees. We disagree.

■ Judge Sutherland dismissed Mother's action on two grounds: (1) that the complaint sought virtually identical relief from that previously sought and litigated before Judge Bridges; and (2) that the complaint failed to state facts sufficient to state a cause of action.[4]

■ Judge Sutherland was correct that the issues raised in Mother's new action were identical to those embraced in the appeal from Judge Bridges' order. There are no allegations in the complaint of any changes in circumstance which had occurred since the issuance of Judge Bridges' order. Under these circumstances, Judge Sutherland properly granted Father's motion to dismiss on both grounds and ordered Mother to pay attorney fees of $750. Therefore, we affirm Judge Sutherland's order.

## II. Father's Appeal

Father argues on appeal that Judge Bridges erred in failing to find a change in circumstances sufficient to order a transfer of custody to him. He also asserts the trial judge erred in failing to award him attorney fees and costs since he was the prevailing party on the custody issue. In view of our resolution of the custody issue, we find Father's arguments without merit.

## *CONCLUSION*

In conclusion, we affirm the orders issued by Judge Segars–Andrews and Judge Sutherland. We also affirm that portion of Judge Bridges' order which directed that Ashton remain in the primary custody of her Mother, but reverse that portion

---

4. We note that Mother does not appeal from the second ground. Therefore, it is the law of the case. Rule 207(b)(1)(B), SCACR (No point will be considered which is not set forth in the statement of issues on appeal.); *Renaissance Enters., Inc. v. Ocean Resorts, Inc.*, 326 S.C. 460, 483 S.E.2d 796, 798 (Ct.App.1997). Judge Sutherland's order is thus affirmable on that ground alone.

which denied Mother's request to relocate to Arizona with Ashton. In light of our decision to allow Mother to remove Ashton to Arizona, we remand the issue of visitation to the family court.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

STILWELL and HOWARD, JJ., concur.