602 S.E.2d 32

**Charlotte LATIMER, Stuart Latimer, and Michelle Farmer, Appellants,**

v.

**Daniel FARMER, Respondent.**

**No. 25857.**

Supreme Court of South Carolina.

Heard May 27, 2004.

Decided Aug. 16, 2004.

Raymond W. Godwin, of Greenville, for Appellants.

Robert M. Rosenfeld, of Porter & Rosenfeld, of Greenville, for Respondent.

Kelvin R. Kearse, of Easley, Guardian ad Litem.

Justice BURNETT:

This is a custody dispute arising out of the custodial parent's relocation. Appellant Michelle Latimer Farmer (Mother) appeals the family court order concluding Respondent Daniel W. Farmer (Father) should be allowed to relocate with their adopted child (Child). Appellants Charlotte and Stuart Latimer (Grandparents) appeal the family court's order denying them autonomous visitation rights with Child. We affirm.

## FACTS

Mother and Father were married on June 4, 1988 and were divorced on February 11, 2000 because of Mother's adultery with one John Case.

Approximately a year and a half before the divorce, Father and Mother adopted Child, a Romanian orphan born May 14, 1997. Father and Mother brought Child home to Greenville in August 1998. Three weeks later, Father discovered Mother's adulterous relationship with Case. Mother agreed to terminate the relationship and the couple were reconciled.

In May 1999, the parties' adoption of Child was completed. One month later, Mother separated from Father. Father became suspicious of Mother's activities, and, at the suggestion of Mother's parents, hired a private investigator who confirmed Mother was still involved in the adulterous relationship. Following initiation of divorce proceedings by Father, the parties, by agreement, resolved all issues incident to the divorce. The agreement provided Father would have sole custody of Child and Mother was given visitation each week from 6:00 p.m. Thursday through 6:00 p.m. Saturday and additional visitation during holiday and vacation periods.

Father is an automation programmer.[1] While in Greenville Father was employed by Fluor–Daniel Corporation. Father sought and received a job offer in Plymouth, Michigan and now resides there with Child, his new wife, and a child born to them.

When Father informed Mother he was moving to Michigan, Mother and Grandparents sought and obtained an *ex parte* order preventing Father from moving to Michigan with Child. Appellants also sought a permanent restraining order preventing Father from moving out of state with Child or, in the alternative, transfer of custody to Mother. A hearing was held in November 2001. The court concluded it to be in Child's best interests to allow Father to move to Michigan with Child. The court also denied Grandparents' autonomous visitation rights independent of those of Mother. The court ordered extensive visitation for Mother, including computer teleconferencing, e-mail, and telephone contact.[2]

## · ISSUES

I. Did the family court err in allowing Father to relocate to Michigan and declining to change custody of Child to Mother?

---

1. While in Greenville, Father's job entailed creating programs for automated industries, visiting factories for which the programs were designed and implementing the programs. He has no formal education, but has received on the job training.

2. Telephone contact is unlimited when initiated by Child. Wife has two calls per week not to exceed thirty minutes at specified times. Computer teleconferencing is unlimited when initiated by Child and one per week when initiated by Wife. E-mail access is unlimited.

II. Did the Guardian ad Litem (GAL) adhere to the proper standards in conducting his investigation?

III. Did the family court judge abuse his discretion in denying separate visitation rights to Grandparents?

## LAW/ANALYSIS

 Where a family court order is appealed, we have jurisdiction to find facts based on our own view of the preponderance of the evidence. We are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to evaluate their credibility. *Strout v. Strout*, 284 S.C. 429, 327 S.E.2d 74 (1985). This degree of deference is especially true in cases involving the welfare and best interests of the child. *Dixon v. Dixon*, 336 S.C. 260, 263, 519 S.E.2d 357, 359 (Ct.App.1999). Our broad scope of review does not relieve the appealing party of the burden of showing the family court committed error. *Skinner v. King*, 272 S.C. 520, 252 S.E.2d 891 (1979).

### I.

We are called upon to resolve one of the most challenging problems our family courts encounter. Cases involving the relocation of a custodial parent with a minor child bring into direct conflict a custodial parent's freedom to move to another state without permission from the court and the noncustodial parent's right to continue his or her relationship with the child as established before the custodial parent's relocation.

Some states recognize a presumption in favor of the custodial parent's right to relocate. *See e.g., In re Custody of D.M.G. & T.J.G.*, 287 Mont. 120, 951 P.2d 1377, 1383 (1998); *In re Marriage of Burgess*, 13 Cal.4th 25, 51 Cal.Rptr.2d 444, 913 P.2d 473 (1996). Since our decision in *McAlister v. Patterson*, 278 S.C. 481, 299 S.E.2d 322 (1982), the courts in this state have been guided by a presumption against relocation in determining whether to allow a custodial parent to relocate with a minor child. We take this opportunity to review this presumption. Insofar as *McAlister* established a presumption against relocation, we hereby overrule it for the following reasons.

First, we recognize that standards imposing restrictions on relocation have become antiquated in our increasingly transient society. Second, confusion abounds surrounding the status of our relocation law, in part, because of the often stated, but infrequently applied, presumption against relocation. In all child custody cases, including relocation cases, the controlling considerations are the child's welfare and best interests. The presumption against relocation is a meaningless supposition to the extent a custodial parent's relocation would, in fact, be in the child's best interest.

Under the present facts, Mother seeks a change in custody. As in all matters of child custody, a change in custody analysis inevitably asks whether the transfer in custody is in the child's best interests. In order for a court to grant a change in custody, there must be a showing of changed circumstances occurring subsequent to the entry of the divorce decree. *Davenport v. Davenport*, 265 S.C. 524, 220 S.E.2d 228 (1975). "A change in circumstances justifying a change in the custody of a child simply means that sufficient facts have been shown to warrant the conclusion that the best interests of the children would be served by the change." *Stutz v. Funderburk*, 272 S.C. 273, 276, 252 S.E.2d 32, 34 (1979). The change of circumstances relied on for a change of custody must be such as would substantially affect the interest and welfare of the child. Because the best interest of the child is the overriding concern in all child custody matters, when a non-custodial parent seeks a change in custody, the non-custodial parent must establish the following: (1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child.

In the present case, Mother seeks a change in custody. Therefore, she bears the burden of establishing both of these criteria.[3]

---

3. Mother disagrees that she bears the burden of showing a substantial change in circumstances. Mother argues Father seeks to modify the custody agreement. However, the custody agreement is silent on whether Father could move out of state with Child. Therefore, there was no agreement on relocation to be modified. This case is distinguishable from *Pitt v. Olds*, 333 S.C. 478, 511 S.E.2d 60 (1999). In *Pitt*, the custodial, relocating parent sought a modification of the custody

■■ Mother has failed to show a substantial change in circumstances warranting a change in custody from Father to Mother for reasons set forth below. Father's remarriage, in and of itself, is not a sufficient change of circumstance affecting the welfare of Child to warrant a transfer of custody to Mother. *See Fisher v. Miller*, 288 S.C. 576, 344 S.E.2d 149 (1986) (remarriage alone is not sufficient to warrant a change in custody). Likewise, a change in Father's residence is not itself a substantial change in circumstances affecting the welfare of Child, which justifies a change in custody. We decline to hold relocation in itself is a substantial change in circumstance affecting the welfare of a child. Relocation is one factor in considering a change in circumstances, but is not alone a sufficient change in circumstances. One location may not necessarily affect the best interests of the child as would another. The effect of relocation on the child's best interest is highly fact specific. It should not be assumed that merely relocating and potentially burdening the non-custodial parent's visitation rights always negatively affects the child's best interests.

Not only has Mother failed to show a change in circumstances affecting Child's welfare, she has also failed to show a change in custody would be in Child's best interests. We believe the best interests of Child are served by Father's relocation with Child to Michigan. We have not previously delineated criteria for evaluating whether the best interests of the child are served in relocation cases. As noted by the Court of Appeals in *Pitt v. Olds*, 327 S.C. 512, 519, 489 S.E.2d 666, 670 (Ct.App.1997), *reversed on other grounds*, 333 S.C. 478, 511 S.E.2d 60 (1999), other states have provided criteria to guide a court's decision. We do not endorse or specifically approve any of these factors for consideration, but merely provide the following for consideration in determining whether a child's best interests are served. For example, the New York Court of Appeal has set forth the following factors when determining if the child's best interests are served:

order to alter the visitation schedule and consequently bore the burden of showing a substantial change in circumstances. In the present case, the non-custodial parent seeks a change in custody and therefore bears the burden of showing sufficient changed circumstances affecting the welfare of the child.

(1) each parent's reasons for seeking or opposing the move,

(2) the quality of the relationships between the child and the custodial and noncustodial parents,

(3) the impact of the move on the quality of the child's future contact with the noncustodial parent,

(4) the degree to which the custodial parent's and child's life may be enhanced economically, emotionally, and educationally by the move, and

(5) the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements.

*Tropea v. Tropea,* 87 N.Y.2d 727, 642 N.Y.S.2d 575, 665 N.E.2d 145, 148 (1996).

Pennsylvania requires courts in potential relocation cases to consider:

(1) the potential advantages of the proposed move, economic or otherwise;

(2) the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a whim on the part of the custodial parent;

(3) the integrity of the motives of both the custodial and noncustodial parent in seeking the move or seeking to prevent it;

(4) and the availability of realistic substitute visitation arrangements that will adequately foster an ongoing relationship between the child and the noncustodial parent.

*Gancas v. Schultz,* 453 Pa.Super. 324, 683 A.2d 1207, 1210 (1996). Montana and Florida have compiled comparable factors.[4]

---

4. Montana's factors are:

(1) whether the prospective advantage of the move will improve the general quality of life for parent and child; (2) the integrity of the custodial parent's motives in moving; (3) the integrity of the noncustodial parent's motives for opposing the relocation, and the extent to which it is intended to secure a financial advantage with respect to continuing child support and; (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted.

Applying some of these factors to this case and considering foremost the overriding consideration in all custody matters, *i.e.*, the best interests of the child, we affirm the family court's order allowing Father to relocate to Michigan and denying a change in custody.

First, the potential advantages of the proposed move weigh in favor of Father's relocation. Father's current job, unlike his previous employment in Greenville, does not require travel, thereby allowing him to spend more time with Child. Additionally, Father has a stable family environment in Michigan having his siblings in close vicinity. Mother and her family, on the other hand, have a history of familial discord. Not only has Mother's relationship with her parents been unstable, Mother's brother is currently estranged from Grandparents.

Child's moral upbringing is also enhanced by her relocation with Father. The family court concluded even though Mother was a full time homemaker prior to the parties' separation, Father assumed the majority of the care of Child when he came home from work. The court also found Father has taken the responsibility for the moral upbringing of Child by taking her to church and reading her Bible stories.

Second, we conclude it likely the move would improve the quality of life for the custodial parent and the child, and it is not the result of a whim on the part of the custodial parent. For the reasons stated above, the quality of Child's life would be enhanced by the dependable and loving family environment in Michigan.

---

*Carter v. Schilb,* 877 S.W.2d 665, 667–68 (Mo.Ct.App.1994). Florida law provides the court must consider:

(1) whether the move would be likely to improve the general quality of life for both the residential parent and the child; (2) the extent to which visitation rights have been allowed and exercised; (3) whether the primary residential parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements; (4) whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child and the secondary residential parent; (5) whether the cost of transportation is financially affordable by one or both parties; and (6) whether the move is in the best interests of the child.

Florida Statutes § 61.3(2)(d) (1997).

Third, the integrity of the motives of both the custodial and noncustodial parent in seeking the move or seeking to prevent it neither weigh in favor of nor against Child's best interests. The family court concluded Father's primary reason for the move was job related. Neither Father's reasons for moving nor Mother's reasons for seeking a change in custody seem to originate from spiteful or vindictive motives thereby affecting Child's best interests.

Fourth, we consider the availability of a realistic substitute visitation arrangement that will adequately foster an ongoing relationship between Mother and Child. Clearly, the relationship between Mother and Child will be significantly affected given the prior frequency of contact and the hardship now imposed on the visitation schedule because of the distance to travel. Mother is provided extensive contact with Child given the distance involved. As previously noted, the family court ordered Mother would have extensive visitation with Child.

Mother raises several evidentiary issues in disputing the family court's order that Child's relocation with Father is in Child's best interests. First, Mother argues the family court erred in allowing testimony about her adulterous conduct predating the adoption hearing, which violated principles of res judicata. We disagree. Res judicata requires three elements: (1) the judgment must be final, valid and on the merits; (2) the parties in the subsequent action must be identical in the first; (3) the second action must involve matters properly included in the first action. *Plum Creek Dev. Co., Inc. v. City of Conway*, 334 S.C. 30, 512 S.E.2d 106 (1999). The third element is not satisfied. The court's finding in the adoption hearing on the fitness of parents for purposes of adoption has no bearing on any future determination of custody.

As to Mother's assertion the family court judge overemphasized Mother's adultery in refusing to transfer custody to her, a review of the order shows this determination was not based on Wife's adulterous conduct. The family court made specific findings regarding the best interests of Child and the effect of her relocation on her welfare. Specifically, the court found Father has taken a proactive role in Child's life, has taken responsibility for Child's moral upbringing, and has a history

of fostering familial relationships. It is upon these bases the family court judge made his determination regarding custody. Even with no proof of adultery, the record supports the grant of custody to Father.

Second, Mother argues the court failed to give due consideration to Child's age and background in determining whether a change in custody was appropriate. We disagree. The court did consider Child's age and the fact Child is a Romanian orphan and Mother previously had significant visitation. Recognizing the hardship imposed on the mother/daughter relationship, the Court made a special provision for "live" video teleconferencing. Additionally, Father actively participated in the Romanian adoption and there is no indication Mother has special knowledge regarding Romanian orphans.

Finally, Mother contends the court improperly ignored the testimony of Heather Cirelli, an expert who spoke on the possible negative consequences of Father relocating with Child. We disagree. In the court's Order on Motion to Reconsider, the court expressed great reservation about Cirelli's credentials. The court stated it exercised great latitude in even qualifying Cirelli as an expert. Cirelli was contacted about three weeks prior to trial and saw Child only once. To the extent Mother advanced a contrary opinion at trial, the family court acted within its discretion in assigning more weight to Father's expert. *See Bragg v. Bragg,* 347 S.C. 16, 21–22, 553 S.E.2d 251, 254 (Ct.App.2001) (appellate court is not required to ignore the trial judge who saw and heard the witnesses and was in a better position to evaluate their credibility and assign comparative weight to their testimony).

For the foregoing reasons, Mother has failed to show (1) a substantial change in circumstances affecting Child's welfare and (2) a change in custody advances Child's overall best interests. Additionally, the court did not err in its evidentiary rulings.

## II.

Mother argues the trial court erred in failing to require the GAL to adhere to the standards we set forth in *Patel v. Patel,* 347 S.C. 281, 555 S.E.2d 386 (2001). The present case was filed in April 2000 and pre-dates the *Patel*

opinion. Although the GAL was allowed to make a recommendation regarding custody prior to the *Patel* decision, we conclude the guardian meticulously conducted an independent, balanced, and impartial investigation.

In *Patel*, we set the baseline standards for the responsibilities and duties of a GAL. In particular, the GAL shall:

> conduct an independent, balanced, and impartial investigation to determine the facts relevant to the situation of the child and the family, which should include: reviewing relevant documents; meeting with and observing the child in the home setting and considering the child's wishes, if appropriate; and interviewing parents, caregivers, and others with knowledge relevant to the case.

*Id.* at 288, 555 S.E.2d at 390; *see also* South Carolina Private Guardian Ad Litem Reform Act, S.C.Code Ann. § 20–7–1549 (Supp.2003) (codifying the *Patel* guidelines with more specificity, but only directly applicable to guardians ad litem appointed after January 15, 2003).

In *Patel*, the GAL's investigation overwhelmingly favored the husband. For example, the GAL contacted the husband's attorney nineteen times, but failed to ever contact wife's counsel. The GAL only met with the children when they were with the husband. The GAL even secretly listened in on conversations between husband and wife while visiting with the husband. *Id.* at 286, 555 S.E.2d at 388–89. The Court concluded the actions and inactions of the GAL so tainted the decision of the family court that wife was not afforded due process. *Id.* at 286–87, 291, 555 S.E.2d at 389, 391.

In this case the GAL submitted two reports. The GAL interviewed Mother on several occasions and observed Mother and Child together on one occasion. The GAL also met independently with Mother's new husband. When the GAL learned Mother had remarried, the GAL requested Mother send photographs of her new home and Child's bedroom. The GAL noted the Mother's residence was "very adequate." The GAL also stated that if Child were placed with Mother and her husband on a permanent basis, Child would not suffer. The GAL testified Mother did a good job with Child, takes good care of her and her husband seemed "very genteel."

The GAL observed Father with Child on two occasions. One visit was at the former marital home in Easley and the other was in the GAL's office. The GAL did not visit the Father in Michigan, finding it would present an undue financial burden for the litigants. Instead, the GAL requested Father send information pertaining to the town where Father was living, the schools, and pictures of the home. Therefore, there is no merit to Mother's assertion that the GAL was biased because he asked Father to prepare an album for him with information about Father's situation.

Finally, Mother alleges the GAL has not spent substantial time with Child in eighteen months. To the contrary, the GAL consistently inquired of both parents as to Child's situation. The GAL filed a supplemental report in July 2003. The GAL attended depositions of Mother and Father about six weeks prior to the trial date. At that time the GAL asked questions and received updated information. We conclude the GAL showed no bias or prejudice in the investigation.

### III.

■ Grandparents argue the trial court erred in failing to permit them some form of autonomous visitation with Child. We disagree.

South Carolina Code Ann. § 20-7-420(33) (Supp.2003) provides the family court has exclusive jurisdiction

> to order periods of visitation for the grandparents of a minor child where ... parents of ... child ... are divorced ... regardless of the existence of a court order or agreement, and upon a written finding that the visitation rights would be in the best interests of the child and would not interfere with the parent/child relationship. In determining whether to order visitation for the grandparents, the court shall consider the nature of the relationship between the child and his grandparents prior to the filing of the petition or complaint.

In *Brown v. Earnhardt*, 302 S.C. 374, 396 S.E.2d 358 (1990), we stated,

> it would seldom, if ever be in the best interests of the child to grant visitation rights to the grandparents when their child, the parent, has such rights. Visitation by grandpar-

ents should be derivative; otherwise the child might have four, or even six people competing for his company: father, mother, paternal grandparents and maternal grandparents. *Id.* at 377, 396 S.E.2d at 360 (quoting *In the Matter of Adoption of a Child by M.,* 140 N.J.Super. 91, 355 A.2d 211, 213 (Ch. Div.1976)).

In *Camburn v. Smith,* 355 S.C. 574, 586 S.E.2d 565 (2003), we applied the United State Supreme Court's opinion in *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Under *Troxel,* the court must give "special weight" to a fit parent's decision regarding visitation. Before visitation may be awarded to grandparents over a parent's objection, one of two evidentiary hurdles must be met: the parent must be shown to be unfit by clear and convincing evidence, or there must be evidence of compelling circumstances to overcome the presumption that the parental decision is in the child's best interest.

No compelling or exceptional circumstances exist in this case that would warrant autonomous visitation. This is a difficult case because Grandparents enjoyed a close relationship with Child and were her primary caretakers during the marital difficulties between Mother and Father. However, given the tumultuous nature of the relationship between Mother and Grandparents, we believe autonomous visitation with Grandparents could divide the family further should Mother's relationship with her parents again deteriorate. A contentious environment created by an additional visitation schedule would not be in Child's best interests. However, we strongly encourage Mother to foster an ongoing relationship between Child and Grandparents by sharing her visitation time with Grandparents when Child visits her in South Carolina.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the family court (1) denying a change in custody to Mother, (2) concluding the GAL followed appropriate standards in his investigation, and (3) denying Grandparents autonomous visitation rights.

MOORE, Acting C.J., WALLER, PLEICONES, JJ., and Acting Justice CLIFTON NEWMAN, concur.