THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Linda Dallas and Frankie Dallas,Respondents,
 
 
 

v.

 
 
 
 James Todd, II, and Tammy Todd, Defendants,
 Of whom James Todd, II is the, Appellant,
 
 In Re: James Todd, III, Christian Todd and Mason Todd, (Minors Under the Age of 18).
 
 

Appeal From Dorchester County
 William J. Wylie, Jr., Family Court Judge

Unpublished Opinion No. 2005-UP-224
Submitted March 1, 2005  Filed March 31, 2005

AFFIRMED

 
 
 
 Jennifer L. Queen and William R. Hearn, Jr., both of Summerville, for Appellant.
 Russell S. Stemke, of Isle of Palms, for Respondents.
 
 
 

PER CURIAM: James Todd, II, (Father) appeals the termination of his parental rights to his three children.  We affirm.[1]
FACTS

In 1998, pursuant to an action by the South Carolina Department of Social Services, the family court granted temporary legal custody of Fathers two older children, James Todd, III, and Mason Todd, to Linda Dallas after finding a threat of physical neglect against Father and Tammy Todd, the childrens mother (Mother).  Dallas is Mothers aunt.  After a judicial review hearing in December 1998, the family court issued an order dated May 17, 1999, granting Dallas and her husband Frankie Dallas permanent legal and physical custody of the children.  The May 17, 1999 custody order also prohibited both Mother and Father from having contact with the children except in a therapeutic setting, but allowed them to petition for visitation if they completed psychological counseling and a clarification process regarding the circumstances that led to the childrens removal from their care.  Christian Todd, a third child born to Mother and Father on January 24, 2001, has lived with the Dallases since a few weeks after he was born. 
In 2002, the Dallases brought the present action seeking to adopt James, Mason, and Christian, and to terminate Fathers parental rights to all three children.  Mother, who was also a party to the proceedings, had waived her rights and consented to the adoption.  
Following a hearing on September 16 and 17, 2003, the family court issued an order on January 13, 2004, terminating the parental rights of Father and Mother to the children and allowing their adoption by the Dallases.  Father appeals.
LAW/ANALYSIS
1.  We disagree with Fathers argument that the family court erred in terminating his parental rights for willful failure to visit.  
The family court may order a termination of parental rights upon finding that  (1) a child has lived outside the home of either parent for six months and during that time the parent has willfully failed to visit the child, and (2) termination is in the childs best interest.[2]
The family court found Father had no contact with any of the children since December 1998.  Father does not dispute this finding on appeal.  In his brief, however, he argues he left South Carolina for a significant period of time to seek employment, had made several unsuccessful attempts to contact the children by calling the Dallases residence to schedule visits with them during their therapy appointments, and was not aware that under the custody order he could petition for visitation with the children after completing certain steps in a treatment program.  
 The arguments that Father advances on appeal do not undermine the family courts finding that Father willfully failed to visit the children.  Father does not contest the finding in the appealed order that he was constantly moving his residence from one state to another without providing the [Dallases] or his children with his current whereabouts or with any other information that would provide a means for them to contact him if they desired to, thereby purposely eliminating himself from the lives of his children and all manner of contact with them.  As to Fathers attempt to schedule visits with the children through the Dallases, Linda Dallas denied that Father called her to inquire about the childrens therapy appointments.  The family court found her testimony to be much more credible than that offered by Father.[3]  Finally, we are not persuaded by Fathers assertions that he was unaware of the provisions in the custody order under which he could petition for visitation.  It is apparent from that order that he was present and represented by counsel at the hearing and there appears to be no dispute that he was aware of another provision in the same order restricting his contact with the children.
2.  Similarly, Father contends the Dallases failed to establish by clear and convincing evidence that he willfully failed to support the children so as to warrant termination of his parental rights.  On appeal, Father asserts (1) he was disabled and this disability limited his capacity to pursue gainful employment; (2) he attempted to provide health insurance for the children through his employment at Wal-Mart, but was unable to because he did not have their social security numbers; and (3) he provided the children gifts, clothes, toys, Wal-Mart gift cards, and money orders.  We find these arguments unavailing.  
As noted by the family court, Father provided no corroborating evidence of the injury that led to his alleged disability and Wal-Mart already had the childrens social security numbers because the children had previously been insured through Mothers employment with Wal-Mart.  The family court also found that Father failed to provide corroborating evidence that he had sent the children gifts and noted that, even if he were to be given credit for what he claimed to have sent, the full dollar value of all the gifts that Father purportedly sent the children since they began residing with the Dallases was insignificant at best.[4]
3.  Finally, Father asserts the family court erred in finding the best interests of the children would be served by termination of his parental rights.  Specifically, he contends (1) because he does not object allowing the Dallases to retain custody of the children, the only significant change that would result from their adoption by the Dallases would be that their last name would be changed; and (2) there was a complete lack of evidence as to what was in the best interest of Christian, the youngest child.  We reject these arguments.  
Statutes authorizing the termination of parental rights must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship. The interests of the child shall prevail if the childs interest and the parental rights conflict.[5]  Parental rights do not spring full-blown from the biological connection between parent and child.  They require relationships more enduring.[6]
Contrary to Fathers first argument, the family court found that, based on statements by the counselor for one of the children as well as testimony from Linda Dallas and the guardian ad litem, the children would suffer severe psychological and emotional harm if they were to ever again to have contact with [Father] in the future, or if they were to ever be separated from each other.  The family court further determined that the adoption of the children by the Dallases would benefit them psychologically, socially, and emotionally, and would allow them to enjoy the benefits of belonging to a true family and the ability to call the [Dallases], who they regard as their parents, Mom and Dad.  
To the extent that Fathers argument regarding the youngest child has been preserved for appeal, we agree with the Dallases that the record supports a finding that Father had absolutely no relationship with Christian and expressed no desire to have one.  To the contrary, there was undisputed evidence that Father not only attempted to deny that Christian was his biological child but also demanded that Mother sell the child for $25,000.  We therefore hold the family courts finding that termination of Fathers parental rights is in the best interests of all three children.[7]
AFFIRMED.
GOOLSBY, HUFF, and STILWELL, concur.

[1]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  S.C. Code Ann. § 20-7-1572(3) (1976 & Supp. 2004).
[3]  See Latimer v. Farmer, 360 S.C. 375, 380, 602 S.E.2d 32, 34 (2004) (We are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to evaluate their credibility.  This degree of deference is especially true in cases involving the welfare and best interests of the child.).
[4]  See S.C. Code Ann. § 20-7-1572(4) (1976 & Supp. 2004) (stating that [f]ailure to support means that the parent has failed to make a material contribution to the childs care and noting [a] material contribution consists of either financial contributions according to the parents means or contributions of food, clothing, shelter, or other necessities for the care of the child according to the parents means).  In the present case, the family court noted that when totaled the full dollar value of all such gift certificates and other matter did not even exceed $400.00 over the full course of time during  which [the Dallases] have had custody of the three minor children.
[5]  Id. § 20-7-1578.
[6]  Caban v. Mohammed, 441 U.S. 380, 397 (1979), quoted in South Carolina Dept of Social Servs. v. Parker, 336 S.C. 248, 259, 519 S.E.2d 351, 356 (Ct. App. 1999).
[7]  Although we affirm the termination of parental rights, we extend our gratitude to Todds counsel for the fine representation they have given their court-appointed client during both the trial and this appeal.