*257 GEATHERS, J.:
**164 In this child custody action, Brooke L. Arnold (Mother) seeks review of the family court's order awarding Maxie **165 Burgess (Father) primary custody of their eight-year-old son (Son) should Mother relocate to Florida. Mother argues the family court erred by (1) creating a custody arrangement that penalizes Mother for relocating to Florida; (2) applying an initial custody analysis rather than a change-in-circumstances analysis; and (3) imposing a joint custody arrangement based on a finding that the parties had been operating under a joint custody arrangement prior to Father's filing of this action. In Father's cross-appeal, he challenges the family court's ruling that automatically reinstates Mother's primary custodian status if she returns to South Carolina after relocating to Florida. Father argues a substantial change in circumstances must be shown before the family court may change custody and the family court did not have jurisdiction to make such a ruling. We reverse and remand.[1]
FACTS/PROCEDURAL HISTORY
Mother and Father were never married to each other, but they were in a committed relationship until Son was eighteen months old. Subsequently, Mother continued her sexual relationship with Father until 2012 "in hopes they would become a family." Except for a few months in 2008, Father has not paid child support, and prior to this action, Mother never sought a court order imposing child support payments on Father.
Mother met LaBaron Paschall, an Army Ranger instructor, in May 2012 during Bike Week. At that time, Paschall was stationed in Fort Bragg, North Carolina, and was vacationing in Myrtle Beach. Both Mother and Father were living in Surfside Beach. Mother's relationship with Paschall became romantic in July 2012. Within the following few months, Paschall moved to Florida, but he continued his relationship with Mother. By early 2014, Mother and Paschall decided to marry, and they began discussing Mother's relocation to Florida; however, their wedding was postponed until June 27, 2015.
By May 2014, Father was concerned about Mother taking Son to Florida with her, and he filed this action seeking custody of Son. Mother later filed an answer and counterclaim seeking custody of Son. In June 2014, Mother sought counseling **166 for Son to address his anxiety over the possibility of moving to Florida as well as disciplinary issues between Mother and Son.
The family court conducted a final hearing from August 3 through August 5, 2015. At the time of the hearing, Paschall was stationed at Elgin Air Force Base near Fort Walton Beach, Florida, and he had plans to retire by February 1, 2016, and start a private security business. Also, at this time, Mother was pregnant with Paschall's child. On September 28, 2015, the family court filed its final order granting Mother and Father joint custody of Son, with Mother having primary custody "over all issues except education" and granting Father primary custody of Son in the event that Mother relocated to Florida.
Mother and Father filed cross-motions to alter or amend the final order, and the family court granted in part and denied in part each motion. Specifically, as to the issues relevant to this appeal, the family court granted Father's request to address Mother's possible return to Horry County after relocating to Florida and ruled that Mother's primary custody of Son would be reinstated should such a contingency occur. The family court denied Mother's request to reconsider its finding that the parties had a joint custody arrangement before Father filed this action. The family court also rejected Mother's arguments that it should have applied a change-in-circumstances analysis to its custody determination and it should have awarded sole custody to Mother. These cross-appeals followed.
ISSUES ON APPEAL
1. Was the family court's joint custody award in Son's best interests?
2. Was the family court's award of primary custody to Father in the event Mother *258 relocates to Florida in Son's best interests?[2] **167 STANDARD OF REVIEW
"In appeals from the family court, [the appellate c]ourt reviews factual and legal issues de novo." Crossland v. Crossland , 408 S.C. 443, 451, 759 S.E.2d 419, 423 (2014). "Thus, [the appellate c]ourt has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence; however, this broad scope of review does not require the [c]ourt to disregard the findings of the family court, which is in a superior position to make credibility determinations." Id. In fact, "[t]he burden is upon the appellant to convince the appellate court that the preponderance of the evidence is against the family court's findings." Simcox-Adams v. Adams , 408 S.C. 252, 260, 758 S.E.2d 206, 210 (Ct. App. 2014).
LAW/ANALYSIS
I. Joint Custody
Mother argues the family court erred by awarding joint custody to both parents rather than awarding Mother sole custody. Mother also challenges the family court's finding that Mother and Father had been operating under a joint custody arrangement prior to this action. We conclude the family court correctly characterized the parties' custody arrangement prior to this action.[3] However, we agree with Mother that the family court should have awarded her sole custody.
The family court's finding that the parties had been operating under a joint custody arrangement prior to this action was supported by not only the testimony of the parties but also the report of the Guardian ad Litem. However, we disagree with the family court's perception that continuing the prior arrangement is in Son's best interests. "In custody decisions, the best interest of the child is the paramount consideration."
**168 Gandy v. Gandy , 297 S.C. 411, 414, 377 S.E.2d 312, 313 (1989) ; see S.C. Code Ann. § 63-15-230(A) (Supp. 2017) ("The court shall make the final custody determination in the best interest of the child based upon the evidence presented."). "Custody is based on a determination of the character, fitness, attitude[,] and inclinations on the part of each parent." Gandy , 297 S.C. at 414, 377 S.E.2d at 313-14.
Further, "[a]lthough the legislature gives family court judges the authority 'to order joint or divided custody [when] the court finds it is in the best interests of the child,' ... joint or divided custody should only be awarded [when] there are exceptional circumstances." Patel v. Patel , 359 S.C. 515, 528, 599 S.E.2d 114, 121 (2004) (quoting S.C. Code Ann. § 20-7-420(42) (Supp. 2003)[4] ). "[G]enerally, joint custody is disfavored" and will be awarded only when exceptional circumstances dictate that such an arrangement is in a child's best interests. Scott v. Scott , 354 S.C. 118, 125, 579 S.E.2d 620, 624 (2003) ; see also Lewis v. Lewis , 400 S.C. 354, 365, 734 S.E.2d 322, 327 (Ct. App. 2012) (noting South Carolina courts have determined joint custody "is usually considered harmful to and not conducive to the best interest and welfare of a child"); but see S.C. Code Ann. § 63-15-230(C) (Supp. 2017) ("If custody is contested or if either parent seeks an award of joint custody, the court shall consider all custody options, including, but not limited to, joint custody , and, in its final order, the court shall state its determination as to custody and shall state its reasoning for that decision." (emphasis added)).
In Scott , our supreme court found exceptional circumstances warranted joint custody *259 due to "the potential for the custodial parent to effectively alienate [the child] from the non-custodial parent" in a sole custody arrangement between those particular parents. 354 S.C. at 126, 579 S.E.2d at 624. The court also noted the family court "fashioned the joint custody to alternate in four-week intervals" that would not be as disruptive as shorter intervals. Id.
Here, Son expressed a desire to continue the joint custody arrangement that was in place before this action was filed. However, the record indicates this arrangement has **169 been stressful for him due to Mother and Father's contrasting parenting styles. Further, Mother has indicated a willingness to allow Father generous visitation with Son even if she relocates to Florida. Father has also indicated a willingness to accommodate Mother's relationship with Son. Nevertheless, we are troubled by Father's recording of conversations in which Son recounted certain actions taken by Mother and Father questioned Son about the reasons for, and morality of, these actions.
The record also indicates Mother is more attuned to Son's emotional needs and more open-minded about her own need for self-improvement. Critically, Mother has recognized the need to have Son tested for Attention Deficit Disorder and the need for counseling to address his emotional needs, whereas Father has been close-minded about these concerns despite his active involvement in Son's education. While Father argues he has cooperated with Mother in these two areas, we are concerned that if he has primary custody of Son upon Mother's relocation to Florida, he would be less likely to follow through with counseling or testing. Moreover, whereas Mother's parenting style was initially undisciplined, she has recognized the need for more structure and consistency in her discipline of Son and her enforcement of school assignments, and she has improved in these areas.
On the other hand, the family court recognized that Father "has a very controlling personality" and "[i]n his mind, his way is the right way and he knows what is best for his child." (family court's emphasis). The record supports the family court's assessment of Father's personality, including his troubling habit of recording conversations with Son and also with Mother without her knowledge.
Additionally, both the family court and the Guardian ad Litem expressed "great concern" over Son's "perceived fear of [Father]." The Guardian ad Litem noted Son was more comfortable expressing his feelings with Mother and seemed more relaxed with Mother. We are also concerned about Son's statement to his counselor that Father "gets women pregnant, they have babies, and he leaves them" and Son's perception that Father lies to him "a great deal." While Son's fear of Father has not discouraged Son from wanting to spend time **170 with Father, Father's continued joint custody of Son, and the possible increase in time Son would spend with Father should Mother relocate to Florida, would eventually take its toll on Son's emotional well-being.
Finally, the new reality of Mother's marriage to Paschall removes the primary reason for the parties' previous joint custody arrangement, i.e., the long hours and travel that Mother's job required of her. Both Mother and Paschall testified Paschall earns enough income to allow Mother to stay at home with Son and her other child. In the alternative, Mother will have the freedom to take a job that would not require her to work as many hours as her then-current job required. Any initial instability Son may experience in adjusting to a new custody arrangement will be outweighed not only by the long-term benefit of living with Mother and her new family but also the potential long-term harm to Son should the parties' joint custody arrangement continue. We further discuss Son's best interests in the following section addressing Mother's possible relocation to Florida.
II. Mother's Relocation
Mother asserts the family court erred by awarding Father primary custody of Son should Mother relocate to Florida because the court focused too heavily on Father's decreased time with Son rather than whether the relocation would be in Son's best interests.
*260 "[T]he question of whether relocation will be allowed requires a determination of whether the relocation is in the best interest of the children, the primary consideration in all child custody cases." Rice v. Rice , 335 S.C. 449, 454, 517 S.E.2d 220, 222 (Ct. App. 1999) ; see also Latimer v. Farmer , 360 S.C. 375, 382, 602 S.E.2d 32, 35 (2004) ("The effect of relocation on the child's best interest is highly fact specific. It should not be assumed that merely relocating and potentially burdening the non-custodial parent's visitation rights always negatively affects the child's best interests."); id. at 380, 602 S.E.2d at 34 (overruling McAlister v. Patterson , 278 S.C. 481, 299 S.E.2d 322 (1982), to the extent it "established a presumption against relocation"). In Rice , the mother moved to Maine after the father filed a divorce action against her but before **171 either party requested any temporary relief. 335 S.C. at 452, 517 S.E.2d at 221. The family court granted custody of the parties' children to the mother but ordered the mother "to return to South Carolina or to any other location within 250 miles of Conway as long as the [f]ather resided there." Id. at 452, 517 S.E.2d at 222. Our supreme court reversed the family court's order requiring mother to return from Maine. Id. at 466, 517 S.E.2d at 229.
Here, Mother has not yet moved to Florida but is seriously contemplating relocating because her husband lives there. The family court found, "A relocation out of [s]tate will most certainly interrupt one parent's ability to maintain as close a relationship with [Son] as he or she is free to do currently." The family court also found, "It is clear from the comparison of his existing residences and the proposed residences that [Son] would be much more stable in his present residences."
We acknowledge that Son's relocation to Florida with Mother will involve the initial instability that inevitably accompanies the relocation of any family. There will be an adjustment period for Son. Nevertheless, the family court gave undue weight to this factor at the expense of the critical factors we discussed in Part I as well as the benefits of living with Mother in Florida. See id. at 460, 517 S.E.2d at 226 (finding the quality of life for the parties' children would be "vastly improved" in the state of the mother's relocation (Maine), "which strongly suggest[ed] that the best interest of the children would be served by allowing them to remain with the [m]other in Maine"); Gandy , 297 S.C. at 414, 377 S.E.2d at 313-14 ("Custody is based on a determination of the character, fitness, attitude[,] and inclinations on the part of each parent.").
While Son's opportunity to spend more time with Mother will undoubtedly come at the expense of less time with Father and his paternal grandparents,[5] Mother's sole custody of Son, **172 regardless of whether she relocates to Florida, is in Son's overall best interests. See Rice , 335 S.C. at 465-66, 517 S.E.2d at 229 (placing priority on the child's best interests over the decreased time the child would have with the father). In addition to the factors discussed in Part I, we note Son has a good relationship with Paschall and Son's relocation with Mother will allow him to be not only with his half-brother but also with his two step-sisters and his maternal grandmother, who plans to move to Florida with Mother. Son has never met Father's other son, who had become an adult by the time Father filed the present action.
In sum, the preponderance of the evidence shows Son's long-term interests will be best served by Mother's sole custody of him even if she relocates to Florida.
CONCLUSION
Accordingly, we reverse the family court's order granting joint custody and remand for entry of an order granting Mother sole custody of Son and a determination of Father's visitation schedule.
REVERSED AND REMANDED.
*261 SHORT, J., concurs.
KONDUROS, J., concurs in a separate opinion.
KONDUROS, J.
I write separately to clarify my position regarding the majority's finding the family court "correctly characterized the parties' custody arrangement prior to this action" as a joint custody arrangement. A family court should not interpret parents' conduct as a custody agreement affecting the standard under which first-time custody determinations are evaluated. See Purser v. Owens , 396 S.C. 531, 534, 722 S.E.2d 225, 226 (Ct. App. 2011) (rejecting the notion the conduct of the parties created a de facto custody agreement sufficient to warrant the application of a change in circumstances standard in determining child's custody). However, the family court in this case found the parties had, prior to the initiation of the action, shared responsibility for and time with Son-conduct generally consistent with joint custody. This was a permissible **173 factual finding appropriately used in the court's evaluation of the totality of the circumstances.

We granted the parties' joint motion to decide this case without oral argument.

In light of our disposition, we need not decide Mother's and Father's remaining issues. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address the remaining issues on appeal when resolution of a prior issue is dispositive).

This finding was merely one of several findings on which the family court relied in determining the totality of the circumstances. See Paparella v. Paparella , 340 S.C. 186, 189, 531 S.E.2d 297, 299 (Ct. App. 2000) (requiring consideration of the "totality of circumstances unique to each particular case" in an initial child custody determination). The family court did not rely on this finding to require either party to show a change in circumstances.

The current version of this statute is found at S.C. Code Ann. § 63-3-530(42) (2010).

Again, Mother has indicated a willingness to allow Father generous visitation with Son even if she relocates to Florida, and the family court has the discretion to fashion a visitation schedule serving Son's best interests. See Arnal v. Arnal , 363 S.C. 268, 291, 609 S.E.2d 821, 833 (Ct. App. 2005) (holding the determination of child visitation is within the family court's discretion and is controlled by the child's best interests), modified on other grounds by 371 S.C. 10, 636 S.E.2d 864 (2006).