MCDONALD, J.:
**77 In this appeal from the family court, April Gilbert Klein (Wife) argues the family court erred in (1) setting joint custody, (2) ordering Wife to pay a portion of Mark Anthony Barrett's (Husband's) attorney's fees and costs, (3) ordering Wife to pay two-thirds of the guardian ad litem's fees and costs, and (4) ordering Wife to pay child support. We affirm.
Facts and Procedural History
Husband and Wife married in Greenville County on September 18, 1997, and subsequently had three children. On May 26, 2010, the family court issued a final order and decree of divorce (Original Order). At the time of the divorce, one child was deceased; the other two children (Daughter and Son)
*775 were ten years old and six years old. Prior to the final hearing, Husband and Wife entered into a settlement agreement (the Agreement), which the family court adopted and incorporated into the Original Order.
**78 Pursuant to the settlement agreement, Husband had primary custody of the children while Wife received visitation in alternating weeks of Thursday night through Sunday evening, with a four-hour visit with the children in the off weeks. Additionally, the Agreement required Wife to pay Husband child support in accordance with the South Carolina Child Support Guidelines. At the time the parties entered the Agreement, Wife planned to attend school to become a certified registered nurse anesthetist (CRNA). The Agreement addressed this, providing, "Wife's child support obligation should be recalculated if Wife's income is reduced while attending school" but should be "re-adjusted upon her completing school and based upon her income at that time." The Agreement also included a clause stating, "Both parties shall have the right of first refusal to babysit the children." Because Wife was enrolled as a full-time student at the time of the divorce, the family court ordered that Wife "shall not pay child support so long as she is in school and without income." The court further found Wife's child support obligation "shall be recalculated once [ ] Wife either finishes school or ceases to attend."
On March 18, 2014, Wife filed an action for modification of custody, seeking sole custody of the children, with Husband to have scheduled visitation. In the alternative, Wife sought joint custody-with equal placement between parents-and for Wife to have final decision-making authority regarding all medical and educational decisions. Wife additionally filed a motion for temporary relief. Husband filed a reply in which he sought the dismissal of Wife's motion for temporary relief, retroactive child support, and attorney's fees.
After a hearing, the family court issued a May 2, 2014 temporary order (First Temporary Order) providing the parties would maintain the status quo and abide by the terms and conditions of the Original Order. The First Temporary Order appointed a guardian ad litem (the Guardian) upon consent of the parties and authorized the Guardian "to request a second temporary hearing without prior approval of the Court."
On June 23, 2014, the Guardian filed a motion for a second temporary hearing, requesting that the family court address the temporary issues raised by the parties; the court held a **79 second temporary hearing on August 15, 2014, and subsequently issued an order (Second Temporary Order) on September 26, 2014. Under the Second Temporary Order, Husband and Wife were to exercise temporary joint custody of the children, with Husband having primary physical placement and Wife having expanded visitation. The family court further determined neither party would receive child support at that time.
After the parties were unable to resolve the case at mediation, the family court appointed Dr. Luther A. Diehl, a clinical psychologist, to conduct a comprehensive custody evaluation. Following a five-and-a-half-day hearing, the family court issued an order on February 12, 2016.[1] Both Husband and Wife filed motions to reconsider, alter, or amend the judgment, and Husband additionally filed a motion to conform the pleadings to the evidence. On July 5, 2016, the family court issued an amended final order (Amended Final Order), vacating the February order. In the Amended Final Order, the court awarded Husband and Wife joint custody of the children, awarded Husband $15,000 in attorney's fees, allocated the Guardian's fees between the parties, and ordered Wife to pay Husband child support.[2]
Wife filed a notice of appeal with this court; however we returned jurisdiction to the family court to clarify its child support calculation. The family court issued a second amended order on February 2, 2018, clarifying its child support calculation.
*776 Standard of Review
On appeal from the family court, the appellate court reviews factual and legal issues de novo. Stoney v. Stoney , 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). Thus, the appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence. Lewis v. Lewis , 392 S.C. 381, 384, 392, 709 S.E.2d 650, 651, 655 (2011). However, this broad scope of review does not require **80 the appellate court to disregard the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. Id. at 385, 392, 709 S.E.2d at 651-62, 655. Therefore, the appellant bears the burden of convincing the appellate court that the family court committed error or that the preponderance of the evidence is against the family court's findings. Id. at 392, 709 S.E.2d at 655.
Law and Analysis
I. Joint Custody
Wife argues the family court erred in setting the parameters of the joint custody arrangement and its findings are not supported by a preponderance of the evidence. Specifically, Wife asserts the court erred in giving Husband primary physical custody of the children because the schedule creates more stress and conflict among the parties whilst simultaneously placing an unfair physical and financial burden on Wife. Wife therefore contends the current joint custody arrangement is not in the best interest of the children. Wife further argues the family court gave Daughter's testimony too much weight and failed to properly consider the recommendations of Dr. Diehl. Wife maintains equal physical placement, as set forth in her parenting plan, is in the children's best interest. We disagree.
"In a child custody case, the welfare of the child and what is in the child's best interest is the primary, paramount, and controlling consideration of the court." McComb v. Conard , 394 S.C. 416, 422, 715 S.E.2d 662, 665 (Ct. App. 2011). "In order for a court to grant a change in custody, there must be a showing of changed circumstances occurring subsequent to the entry of the divorce decree." Latimer v. Farmer , 360 S.C. 375, 381, 602 S.E.2d 32, 35 (2004).
Because the best interest of the child is the overriding concern in all child custody matters, when a non-custodial parent seeks a change in custody, the non-custodial parent must establish the following: (1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child.
**81 Id. "While numerous prior decisions set forth criteria that are helpful in such a determination, there exist no hard and fast rules and the totality of circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." Clark v. Clark , 423 S.C. 596, 605, 815 S.E.2d 772, 777 (Ct. App. 2018) (quoting Davenport v. Davenport , 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975) ). However, "[i]n determining the best interests of the child, the court must consider the child's reasonable preference for custody." S.C. Code Ann. § 63-15-30 (Supp. 2018). "The court shall place weight upon the preference based upon the child's age, experience, maturity, judgment, and ability to express a preference." Id. Additionally, the court may consider numerous factors, including "the temperament and developmental needs of the child[ren] ... [and] the capacity and disposition of the parents to understand and meet the needs of the child[ren]." S.C. Code Ann. § 63-15-240(B) (Supp. 2018).
According to our de novo review of the record, the underlying conflict arose when Husband sent wife an email in November 2013, asking Wife to start paying child support pursuant to the Original Order, which provided Wife's support obligation would commence upon her completion of the CRNA program.[3] In response, Wife informed Husband that she intended to seek joint custody of the children, and a breakdown in the functionality of the arrangement between the *777 parties followed.[4]
Prior to this action, Husband had primary custody of the children, and Wife had generous visitation. In her motion seeking a custody modification, Wife alleged her completion of her CRNA degree studies and subsequent employment constituted a substantial change in circumstances warranting an award of joint custody. During the pendency of this case, the family court issued the Second Temporary Order, granting temporary joint custody of the children. Under this order, Husband had primary physical placement of the children, and Wife had expanded visitation consisting of every other weekend **82 from Thursday to Sunday and every afternoon after school until 6:00 p.m.[5] Although the order required the parties to consult each other regarding decisions relating to the children, Husband retained final decision-making authority in the event the parties could not agree. This custody arrangement remained in effect from September 2014 until the family court issued its February 2016 final order.
Both parties submitted proposed parenting plans to the court. Husband's plan proposed either the arrangement from the Original Order or the arrangement from the Second Temporary Order. Wife's plan proposed either joint custody with her having primary placement and partial decision-making authority or joint custody with equal physical placement, alternating on a week-to-week basis, and divided decision-making authority.
At the hearing, Husband and Wife's testimony largely focused on the problems in their relationship. Specifically, conflicts between the parties arose when scheduling visitation and appointments and making decisions regarding the children's schooling and extracurricular activities. In his custody evaluation report,[6] Dr. Diehl noted Husband and Wife's personalities contributed to their communication issues; he explained Wife's psychological evaluation demonstrated she was more actively controlling in nature, whereas Husband displayed a more passive nature with tendencies to be reactively controlling. However, Dr. Diehl found both parents possessed "adequate psychological resources to function in the role of custodial parent." He believed both Husband and Wife possessed "good individual strengths as parent figures" and seemed to be "very devoted and concerned about the wellbeing of their children." Dr. Diehl further noted, "In considering their relative strengths and weaknesses, it seems that a balance attempting to utilize these strengths would be most desirable." He recommended adhering to a joint custody arrangement in which the **83 children would alternate between households on a weekly basis. Regarding the children, Dr. Diehl noted "the children each enjoy the attention and interaction with both parents."
Similarly, in her report, the Guardian noted both Husband and Wife "demonstrated the capacity to meet the needs of the children." She reported the children were "bright, engaging, respectful, and well-mannered" and both children appeared to have friends and enjoy school. The Guardian stated Daughter had "a responsible, mature nature [,] which seems well beyond that of some of her peers." She noted Daughter was very aware of the tension between her parents, and this caused Daughter anxiety. Suzie Simon, Daughter's therapist,[7] testified Daughter started therapy because she was struggling with anxiety that often manifested in physical symptoms, sometimes causing her to leave class. According to Simon, the litigation of the instant case was "a very large contributing factor" to Daughter's anxiety. Simon opined, "The cause of the anxiety would be a combination of the family stressors, with her age[, the] internal pressure that she puts on herself[,] and trying to *778 please two people who view the world very differently." When asked if Daughter ever discussed the custody arrangement between her parents, Simon responded,
She's expressed to me that she likes the current arrangement where she's at [Husband's] house every night and she's at [Wife's] in the afternoon and then the every other weekend. She likes that she gets to see everybody in a given week. She likes that she doesn't have to pack.
Simon stated Daughter additionally expressed concern over a week-to-week arrangement because she and Son would go longer periods of time without seeing their other siblings.[8] Simon opined Daughter and Son would likely adapt better to smaller changes in the custody arrangement.
Dr. Diehl's evaluation of Daughter was consistent with Simon's testimony. He noted Daughter had a positive relationship with both parents. According to Dr. Diehl, Daughter expressed concern regarding a potential week-to-week custody **84 arrangement for the same reasons previously mentioned by Simon. However, Dr. Diehl noted Daughter expressed wanting to spend a little more time with Wife. According to Dr. Diehl, Daughter suggested staying at Wife's house after school until 7:00 p.m., rather than 6:00 p.m., to allow for more quality time and dinner.
In his evaluation of Son, Dr. Diehl noted Son had "Autism spectrum disorder requiring mild support." Son expressed positive feelings regarding his relationship with both parents and seemed pleased with the current custody arrangement; however, Dr. Diehl noted Son indicated he felt rushed when leaving Wife's house and would like some additional time there in the afternoons after school.
In considering a modification to the current custody arrangement, Dr. Diehl, Simon, and the Guardian all recommended a balanced schedule with clearly delineated visitation and decision-making authority to reduce unnecessary communication between the parties.
After taking testimony at the hearing and receiving detailed reports from the Guardian and Dr. Diehl, the family court found the instant case presented exceptional circumstances warranting an award of joint custody. Although it found Wife's alleged change in circumstances unpersuasive, the court explained the extensive breakdown of communication between Husband and Wife warranted a custody modification. Ultimately, the court held Husband would maintain primary physical placement of the children but Wife would receive expanded visitation; pursuant to the new schedule, the children would spend extensive time with both parents each week. The court terminated the right of first refusal provision, finding the parties' various interpretations of this clause caused a majority of the conflict.
As for Wife's expanded visitation, the court provided Wife would receive alternating weekend visitation, starting Thursday after school and continuing until the start of school on Monday. In weeks for which Wife had weekend visitation (visitation weeks), Wife would additionally have after school visitation Monday through Wednesday until 7:00 p.m. During visitation weeks, the children would eat dinner with Wife. Conversely, during non-visitation weeks, Wife would have **85 after school visitation Monday through Thursday until 6:00 p.m., and the children would eat dinner with Husband. In explaining its allocation of physical custody, the family court stated it considered all relevant factors of section 63-15-240(B) and found the modification served the children's best interests. The court stated,
Both parents demonstrate the ability to provide for the developmental needs of the children and the capacity to understand and meet the needs of the children. By not changing the placement of the children to a week-to-week arrangement, and, instead, adding an additional overnight to [Wife's] visitation schedule, the Court finds that it has protected the preferences of each child.
Regarding legal custody, the court awarded equal decision-making authority by allocating different subjects to each parent. In *779 considering the recommendations of the Guardian and Dr. Diehl, as well as the children's preferences, the court found such an arrangement was the best way to relieve conflict between the parties while serving the best interests of the children.
We find the joint custody arrangement fashioned by the family court serves the best interests of the children. See McComb , 394 S.C. at 422, 715 S.E.2d at 665 ("In a child custody case, the welfare of the child and what is in the child's best interest is the primary, paramount, and controlling consideration of the court."). Although our appellate courts have characterized joint custody as a unique and disfavored arrangement, the instant case presents exceptional circumstances[9] in which both parents have positive relationships with **86 the children and either party could serve as the custodial parent. Therefore, we find the custody modification was warranted to balance the time spent between the parents and the children and to alleviate the brewing conflict arising from the previous arrangement delineated in the Original Order.
In considering the physical placement arrangement challenged by Wife, we commend the family court's efforts to serve the needs of all parties involved. We find the court properly weighed the preferences of the children and the recommendations of the experts and guardian ad litem. See § 63-15-30 ("In determining the best interests of the child, the court must consider the child's reasonable preference for custody."); id. ("The court shall place weight upon the preference based upon the child's age, experience, maturity, judgment, and ability to express a preference."); § 63-15-240(B) (providing the family court may consider numerous factors, including "the temperament and developmental needs of the child[ren] ... [and] the capacity and disposition of the parents to understand and meet the needs of the child[ren]"). The court appropriately incorporated this input into the new custody framework. Specifically, the court addressed the children's desire to spend more time at Wife's home during the week by extending the visitation until 7:00 p.m. on certain evenings so as to increase quality time and allow for family meals with both parents. Additionally, the court expanded the duration of Wife's weekend visitation.
Moreover, we find the court's allocation of legal custody coupled with the adjusted physical placement schedule and the elimination of the "first refusal" clause will help to lessen conflict between the parties while also fostering a positive co-parenting relationship. Although Wife desired equal placement in alternating weeks, the record supports the conclusion that a week-to-week arrangement would not be in the best interest of the children as the children are long accustomed to seeing both parents and their other siblings on a daily basis. Therefore, we affirm the family court's joint custody determination.
II. Attorney's Fees and Costs
Wife argues the family court erred in awarding Husband $15,000 in attorney's fees, asserting the parties **87 should pay their own attorney's fees.[10] We disagree. *780 "In determining whether an attorney's fees should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorney's fees on each party's standard of living." E.D.M. v. T.A.M. , 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992) (citation omitted). "A party's ability to pay is an essential factor in determining whether an attorney's fee should be awarded, as are the parties' respective financial conditions and the effect of the award on each party's standard of living." Srivastava v. Srivastava , 411 S.C. 481, 489, 769 S.E.2d 442, 447 (Ct. App. 2015) (quoting Rogers v. Rogers , 343 S.C. 329, 334, 540 S.E.2d 840, 842 (2001) ).
Considering the applicable factors, we find the evidence in the record supports the family court's award of attorney's fees. Here, both Husband and Wife submitted fee affidavits reflecting fee totals of $28,330.61 and $29,189.52, respectively. At the hearing, Wife testified that since her divorce from Husband, she has completed school and is working as a CRNA. She submitted a financial declaration indicating she earns a gross monthly income of $9,510.80. Husband testified he works as a general contractor and owns two businesses; his submitted financial declaration reflected a gross monthly income of $5,181. We find the disparity of incomes between the parties weighs heavily in Husband's favor. In its Amended Final Order, the family court noted Wife "earns $51,969.60 more per year" than Husband. The court further noted Husband's attorney's fees amounted to approximately forty-four percent of his gross annual income whereas Wife's accrued fees were equivalent to around twenty-five percent of her **88 gross income. Thus, Wife is in a superior position to bear the cost of the fees. Furthermore, we find Husband obtained beneficial results, as Husband maintained primary physical placement of the children and Wife was ordered to commence child support payments. Finally, the family court properly considered the remaining Glasscock factors in fashioning the fee award. See Glasscock v. Glasscock , 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991) (in determining the amount of reasonable attorney's fees, the family court should consider "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services."). Accordingly, we affirm the family court's award of attorney's fees.
III. Allocation of the Guardian ad Litem's Fees and Costs
Wife argues the family court erred in ordering her to pay two-thirds of the Guardian's fees, asserting the parties should equally divide the fees.[11] Specifically, Wife contends the family court improperly penalized her for contacting the Guardian more often than Husband did. We disagree.
"A guardian appointed by the court is entitled to reasonable compensation, subject to the review and approval of the court." S.C. Code Ann. § 63-3-850(B) (2010). The Guardian filed a fee affidavit seeking $18,553 for her services. In its Amended Final Order, the family court found the Guardian was entitled to exceed her initial fee cap pursuant to section 63-3-850(A). See S.C. Code Ann. § 63-3-850(A) (2010) ("If the guardian ad litem determines that it is necessary to exceed the fee initially authorized by the judge, the guardian must provide notice to both parties and obtain the judge's written authorization or the consent of both parties to charge more than the initially authorized fee."). The court further found the Guardian's fee was reasonable in light of the factors enumerated in section 63-3-850(B). See § 63-3-850(B) (In determining the reasonableness of the guardian's fees and costs, "the court must take into account: (1) the complexity of the issues before **89 the court; (2) the contentiousness of the litigation; (3) the time expended by the guardian; (4) the expenses reasonably incurred by the guardian; (5) the financial ability of each party to pay *781 fees and costs; and (6) any other factors the court considers necessary.").
In its allocation of the Guardian fees, the family court found both parties had the ability to pay the fees; however, it determined Wife should bear the majority of the fees and costs because (1) Wife's income was greater than Husband's, (2) Husband was the prevailing party, and (3) "a significant portion of the GAL fee was incurred solely as a result of [Wife's] continuously submitted documents and correspondence and other communication to the GAL over the course of this litigation."
Initially, we note the family court improperly weighed Husband's status as the prevailing party in its allocation of the Guardian's fee award. See Loe v. Mother, Father, & Berkeley Cty. Dep't of Soc. Servs. , 382 S.C. 457, 473, 675 S.E.2d 807, 816 (Ct. App. 2009) ("In reviewing the reasonableness of [the guardian's] fees, the family court erred in applying the factors indicated in Glasscock ... rather than the factors mandated by the statute."). However, we find a preponderance of the evidence supports the family court's allocation of these fees because as previously discussed, supra issue II, Wife is in a superior financial position to bear the burden of fees and costs arising from the litigation of this matter. See Stoney , 422 S.C. at 596, 813 S.E.2d at 487 (providing that on appeal from the family court, the appellate court reviews factual and legal issues de novo). Pursuant to our de novo review of the record, we affirm the family court's allocation of the Guardian's fees and costs.
IV. Child Support
Wife argues the family court erred in ordering her to pay child support, asserting neither party should pay such support. Wife further asserts the Amended Final Order contained typographical or clerical errors in its calculation of child support, making the requisite amount of ordered child support indiscernible.[12] We disagree.
**90 To the extent Wife argues the family court's child support calculation contained typographical or clerical errors, we find this issue is moot as the family court corrected and clarified its calculation by order dated February 2, 2018. See Sloan , 380 S.C. at 535, 670 S.E.2d at 667 ("An appellate court will not pass judgment on moot and academic questions; it will not adjudicate a matter when no actual controversy capable of specific relief exists."). In its February 2018 order, the family court explained it "considered whether to use Worksheet A and deviate from the guidelines or use Worksheet C." Using Worksheet C, the court found Wife should pay $747 per month in child support. In making this determination, the family court stated it weighed the parties' income, ability to pay, education, expenses, and assets. The court further noted that although there was a dispute about the exact amount of overnights Wife received, it found the child support calculation was in the best interest of the children and Wife had the ability to pay the ordered amount.
Regarding Wife's contention that neither party should pay child support, we find the family court's award of child support to Husband is supported by the record. The Legislature has required that
In any proceeding for the award of child support, there is a rebuttable presumption that the amount of the award which would result from the application of the guidelines ... is the correct amount of child support to be awarded. A different amount may be awarded upon a showing that application of the guidelines in a particular case would be unjust or inappropriate.
S.C. Code Ann. § 63-17-470(A) (2010). Section 63-17-470(C) lists the following factors the family court may consider in determining whether to deviate from the guidelines and in considering "whether a change in circumstances has occurred which would require a modification of an existing order": (1) educational *782 expenses; (2) equitable distribution; (3) consumer **91 debts; (4) families with more than six children; (5) unreimbursed extraordinary medical or dental expenses; (6) mandatory deduction of retirement pensions; (7) support obligations for other dependents; (8) child-related unreimbursed extraordinary medical expenses; (9) monthly fixed payments by a court; (10) income of a child; (11) substantial disparity in income making it impracticable for the noncustodial parent to pay per the guidelines; (12) alimony; and (13) certain agreements reached between the parties. S.C. Code Ann. § 63-17-470(C) (2010). "Deviation from the guidelines should be the exception rather than the rule." S.C. Code Ann. Regs. 114-4710 (Supp. 2018).
We find Wife's assertion that neither party should pay child support unpersuasive. It is undisputed that Wife has not paid child support at any time since the entry of the divorce decree in 2010, even though, per the Agreement and the Original Order, she was to begin her support payments upon completion of her CRNA program and subsequent employment.
Husband has maintained primary physical custody of the children since the time of divorce, and although Wife has received expanded visitation, we find child support is warranted. The family court denied Husband's request for retroactive child support; we agree with this finding. But, as previously discussed, supra issue II, Wife is in a superior financial position. Therefore, we hold Wife has failed to meet her burden of establishing the family court's adherence to the child support guidelines was inappropriate or unjust, and we agree with the family court that the circumstances surrounding the instant case did not warrant a deviation.
Conclusion
Based on the foregoing, the orders of the family court are
AFFIRMED.
LOCKEMY, C.J., and SHORT, J., concur.

At the time of the hearing, Daughter was sixteen years old and Son was eleven years old.

Wife had not paid any child support prior to the Amended Final Order.

Both Husband and Wife had remarried at this point.

It is undisputed that the parties had a functional and communicative relationship prior to Husband's request that Wife begin her support payments as required by the Original Order.

Under the Second Temporary Order, the children were to eat all weeknight dinners at Husband's home.

In preparing his evaluation, Dr. Diehl conducted interviews and psychological evaluations of Husband, Wife, Daughter, and Son. He additionally interviewed the children's step-parents, Husband and Wife's co-parenting counselor, Daughter's therapist, and the Guardian.

The family court qualified Simon as an expert in child therapy.

Husband has two step-children with his wife, and Wife has one child with her husband.

The General Assembly imposed no "exceptional circumstances" requirement in 1996, when it codified joint custody as an option for family courts to consider in a child custody determination. See S.C. Code Ann. § 20-7-420(42) (Supp. 1996). In 1969, our supreme court deemed joint custody disfavored in Mixson v. Mixson , 253 S.C. 436, 446, 171 S.E.2d 581, 586 (1969). Later, Justice Waller's opinion in Scott v. Scott , while acknowledging the language of the Legislature's amendment, held the amendment "did not change the law in this State that, generally, joint custody is disfavored." 354 S.C. 118, 124-25, 579 S.E.2d 620, 623-24 (2003) (citing Mixson , 253 S.C. at 446, 171 S.E.2d at 586 ). Still, the Scott court's focus appropriately remained on the best interest of the child, and it affirmed the joint custody determination. Id. at 127, 579 S.E.2d at 624-25.

Wife additionally argues the family court erred in ordering her to pay for the entire cost of the transcript in its February 12, 2016 order and failing to correct the error in its Amended Final Order. In his respondent's brief, Husband admits this was an error by the family court, which the court acknowledged via email dated February 16, 2016. Husband argues, and we agree, that the issue is moot because both parties have paid the court reporter as originally agreed upon. See Sloan v. Greenville Cty. , 380 S.C. 528, 535, 670 S.E.2d 663, 667 (Ct. App. 2009) ("The court does not concern itself with moot or speculative questions.").

Wife has challenged only the family court's allocation of the Guardian's fees, not the fee amount.

Regarding Wife's challenge of the portion of the family court's order requiring her to pay all of Daughter's orthodontic expenses, we find the court's judgment was appropriate because Wife told Husband via email that she would pay for Daughter's uncovered orthodontic expenses. To the extent Wife challenges the provision of the family court's order allowing for yearly reconciliation of uninsured medical expenses, we find Wife has failed to sufficiently present this argument on appeal.