# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Jeffrey Spencer Fossett, Appellant,

v.

Melissa Renee Fossett, Respondent.

Appellate Case No. 2020-000786

―――――――

Appeal from Greenville County
Rochelle Y. Conits, Family Court Judge

―――――――

Opinion No. 6000
Heard March 9, 2023 – Filed July 19, 2023

―――――――

**AFFIRMED**

―――――――

J. Falkner Wilkes, of Greenville, for Appellant.

Joseph M. Ramseur, Jr., and Danielle Metoyer Mitchell, both of Mitchell Ramseur, LLC, of Greenville, for Respondent.

―――――――

**GEATHERS, J.:** In this custody dispute, Appellant Jeffrey Fossett (Father) challenges an order denying a modification of his and Melissa Fossett's (Mother) custody arrangement. Father maintains that the family court erred in failing to consider some substantial changes in circumstances and argues that the attorney's and guardian ad litem's (GAL) fee arrangements are inequitable. We affirm.

**FACTS**

Mother and Father are the divorced parents of two boys, who at the time of the final divorce hearing were ages 10 and 15.[1]  On November 7, 2016, a Final Order of Separate Maintenance and Support (Final Order) was entered, granting primary custody to Mother, child support from Father to Mother, and visitation rights to Father.

On December 2, 2017, Father married his current wife, Holly Fossett (Stepmother).  At the time of the final hearing in the present action, Father and Stepmother had one child together and Stepmother had two children from a previous marriage.

Over time, Mother and Father engaged in numerous email exchanges, which occasionally exhibited accusative tones.  For example, on June 26, 2017, Father sent an email to Mother accusing her of being unfaithful, manipulative, and "[a]n unrepentant liar and deceiver."  Mother was also accused of engaging in "sinful, wicked choices" and "emotional/psychological abuse of the boys[.]"  This, along with many other email exchanges, was later shared with the boys by Father.

On May 29, 2018, Father filed this action requesting modification of the custody order and related fee arrangements.  On October 10, 2018, the family court appointed Amie Carpenter as the GAL for the boys.  After meeting with both boys four separate times, she testified that the children preferred to live with Father but expressed concern that this preference was likely influenced by Father's manipulative behavior.  She also stated that neither child harbored any ill-will toward either of the parents and both exhibited high educational and extra-curricular performance.

On March 30, 2020, the family court issued its Final Order denying Father's requested change in custody and ordering Father to pay a portion of Mother's attorney's fees and GAL fees.  This appeal followed.

## ISSUES ON APPEAL

I.   Did the family court err in failing to weigh substantial changes in circumstances in denying Father's request to modify the custody arrangement?

---

[1] To protect their privacy as minors at the time of trial, the younger child is referred to as "BJF" and the older as "BAF."  BAF was no longer a minor by the time this case was heard on appeal.

II.    Did the family court err in its attorney fee determination?

III.   Did the family court err in its GAL fee determination?

## LAW/ARGUMENT

"On appeal from the family court, the appellate court reviews factual and legal issues de novo." *Klein v. Barrett*, 427 S.C. 74, 79, 828 S.E.2d 773, 776 (Ct. App. 2019); *see also Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (reiterating "that the proper standard of review in family court matters is de novo, rather than an abuse of discretion"). However, we are mindful that because the family court was in a better position to evaluate evidence, custody decisions should largely be left to its discretion. *Shirley v. Shirley*, 342 S.C. 324, 329, 536 S.E.2d 427, 429–30 (Ct. App. 2000). Indeed, "appellate court[s] should be reluctant to substitute [their] own evaluation of the evidence on child custody for that of the [family] court." *Id*. at 331, 536 S.E.2d at 430. "Therefore, the appellant bears the burden of convincing the appellate court that the family court committed error or that the preponderance of the evidence is against the family court's findings." *Klein*, 427 S.C. at 80, 828 S.E.2d at 776.

### I.    Custodial Arrangement

"In making a custody determination, the child's welfare and best interest are the paramount and controlling considerations of the court." *Lewis v. Lewis*, 400 S.C. 354, 364, 734 S.E.2d 322, 327 (Ct. App. 2012). "Because the best interest of the child is the overriding concern in all child custody matters, when a non-custodial parent seeks a change in custody, the non-custodial parent must establish the following: (1) [] a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child." *Latimer v. Farmer*, 360 S.C. 375, 381, 602 S.E.2d 32, 35 (2004).

"A change in circumstances justifying a change in the custody of a child simply means that sufficient facts have been shown to warrant the conclusion that the best interests of the child[] will be served by the change." *Id*. (quoting *Stutz v. Funderburk*, 272 S.C. 273, 278, 252 S.E.2d 32, 34 (1979)). "In order for a court to grant a change of custody based on changed circumstances, the party seeking the change must meet the burden of showing changed circumstances occurring subsequent to the entry of the order in question." *Hollar v. Hollar*, 342 S.C. 463, 473, 536 S.E.2d 883, 888 (Ct. App. 2000). As the parent seeking a modification of

the custodial arrangement, Father bears the burden of proving that a substantial change in circumstances occurred after the latest custody order and that a change in custody is in the best interest of the children.

Father argues that (1) the children's custodial preferences and (2) Father's post-marital family environment should have been considered changes in circumstances sufficient to grant a change in custody. We disagree.

A. Custodial Preference of the Children

"While the child's reasonable preference is a factor in considering the best interest of the child, it is not controlling." *Payne v. Payne*, 382 S.C. 62, 69, 674 S.E.2d 515, 518 (Ct. App. 2009). "The significance to be attached to the wishes of children in a custody dispute depends upon the age of the children and the attendant circumstances." *Brown v. Brown*, 362 S.C. 85, 93, 606 S.E.2d 785, 789 (Ct. App. 2004); *see also Moorhead v. Scott*, 259 S.C. 580, 585, 193 S.E.2d 510, 513 (1972) (comparing the significance of the custodial preference of a six-year-old to that of a sixteen-year-old). However, this significance is counterbalanced by a variety of factors, including a parent's manipulative behavior toward his child. *See* S.C. Code Ann. § 63-15-240(B) (Supp. 2022) (providing an inexhaustive list of considerations for courts when determining the best interest of the child, including "the preferences of each child" and "the manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute"). Thus, we must first assess the boys' respective maturity levels to adequately evaluate their susceptibility to Father's purported manipulative behavior.

Our appellate courts have assigned varying degrees of weight to the custodial preferences of minors depending on their age. In *Guinan v. Guinan*, our supreme court accorded great weight to the preferences of a sixteen-year-old child. 254 S.C. 554, 557, 176 S.E.2d 173, 174 (1970). However, this determination may have been due to the absence of countervailing factors. *See id.* at 557–58, 176 S.E.2d at 174. ("The [family] court made no finding of fact tending to offset this important factor in awarding custody, and the record before us is bare of any evidence tending to do so."). In contrast, this court in *Tillman v. Oakes* found "the preference of a ten-year-old on the important issue of a change in custody to be of little value, if any." 398 S.C. 245, 252, 728 S.E.2d 45, 49 (Ct. App. 2012). We note that this court in *Brown v. Brown* suggested that a ten-year-old's wishes may be given some weight but stated that it "does not rise to the level of 'great weight' that should be given the desires of a sixteen-year-old." 362 S.C. at 95, 606 S.E.2d at 790.

Here, the GAL testified at the family court hearing about the details of a conversation she had with the boys in which they made several statements expressing their desire to primarily reside with their father. According to her, the boys felt that they shared a bond with Father and that spending more time with him meant they could also spend quality time with their half sister and stepsisters. Further, she indicated that the boys may have harbored a lingering resentment of Mother following her divorce with Father. As a ten-year-old at the time of trial, BJF's preference should not be accorded considerable weight due to his age and maturity.[2]  What little significance we may assign to his preference is diminished by Father's manipulative behavior used to involve the children in his ongoing dispute with Mother.

Father argues that the "record fails to show that the children were intentionally manipulated on the issue of custody or placement." We disagree.

We first emphasize that manipulation in the child custody context need not be an intentional effort to alter a child's custodial preference as is suggested by Father. Rather, under section 63-15-240(B)(7), manipulation can transpire in a variety of ways as long as it is manifested "in an effort to involve the child in the parents' dispute."

In the present case, evidence suggests Father engaged in manipulative behavior. The most apparent example is the disclosure of email conversations between Mother and himself, to the children.[3]  Father argues that "the [GAL] testified that [Father] had not manipulated them as to their preference as to where they wanted to live." This is incorrect. At the family court hearing, the GAL

---

[2] We recognize that, as a fifteen-year-old at the time of trial, BAF's custodial preference may have been entitled to more weight. However, because he turned eighteen during the pendency of this appeal, custody issues pertaining to him are moot. *See Curtis v. State*, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001) ("A case becomes moot when judgment, if rendered, will have no practical legal effect upon [the] existing controversy." (alteration in original) (quoting *Mathis v. S.C. State Highway Dep't*, 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973)); *see also Carpenter v. S.C. Dep't of Soc. Servs.*, 278 S.C. 167, 167-68, 293 S.E.2d 432, 432 (1982) (finding a removal proceeding moot when a child turned eighteen during the pendency of an appeal).
[3] Father contends this evidence of manipulation is "petty", but we believe it falls squarely within the type of manipulation identified under section 63-15-240.

expressly testified that, in her view, revealing the prior communications to the children *was* evidence of Father's manipulation.

Additionally, Father demonstrated manipulative behavior when he routinely sent envelopes marked with Mother's maiden name with the children when they returned home to Mother. Father was aware that Mother chose to maintain her marital surname in an effort to remain connected to the children yet declined to address her accordingly.

Finally, Father alleged that Mother used disparaging comments about him in front of the children. We believe these comments are unsubstantiated by the record on appeal. Testimony provided by the GAL indicated that she found no evidence that either parent verbally voiced negative remarks about the other. Given Father's manipulative behavior toward the children, we find BJF's custodial preference insufficient to serve as a substantial change in circumstances.

### B. Father's Post-Marital Family Environment

Father argues that his post-marital family environment should have been weighed in the family court's analysis.

Initially, Father places great emphasis on the family dynamic created upon his remarriage to Stepmother. While the record reflects that Father has fostered a healthy home environment for the boys, the GAL determined that the children are equivalently served in Mother's care. Also, absent additional supporting factors, remarriage is insufficient to modify a custody decree. *See Pitt v. Olds*, 333 S.C. 478, 481, 511 S.E.2d 60, 61 (1999) ("[Our supreme c]ourt has specifically held that remarriage **alone** is not sufficient to warrant modification of a custody decree."); *see also Latimer*, 360 S.C. at 382, 602 S.E.2d at 35 (same).

Father also expresses concern with Mother's decision to use a homeopathic chiropractor to treat BAF's severe eczema. From a very young age, BAF has experienced skin dryness and irritation that Mother remedied with over-the-counter lotions and creams. After the condition worsened, Mother consulted a "homeopathic chiropractor," who prescribed Vitamin E oil and prednisone cream. After a period of months of limited improvement, Stepmother consulted an online dermatologist who prescribed treatments, and as a result, BAF's rash began to disappear.

We do not believe that Mother's actions reflect a dereliction of her responsibility to understand and meet the medical needs of her children. *See* S.C.

Code Ann. § 63-15-240(B)(2) (Supp. 2022) ("[T]he court must consider the best interest of the child, which may include . . . the capacity and the disposition of the parents to understand and meet the needs of the child[.]").  Thus, we believe the family court did not err in assigning it little weight.

Considering the totality of the evidence in the record, we believe Father has failed to show a substantial change in circumstances affecting the welfare of the children.

## II.    Attorney's Fees

Father argues that the family court erred in its attorney fee determination.  We disagree.

"The [family] court, from time to time[,] after considering the financial resources and marital fault of both parties, may order one party to pay a reasonable amount to the other for attorney fees[.]"  S.C. Code Ann. § 20-3-130(H) (2014).  To assess attorney fee determinations, our courts employ a tiered inquiry in which a set of factors are applied to determine whether an award of attorney fees was appropriate; then another set of factors are applied to determine the reasonableness of the amount awarded.  *See Bodkin v. Bodkin*, 388 S.C. 203, 223, 694 S.E.2d 230, 241 (Ct. App. 2010) (listing the sets of factors).  An appellate court reviews "a family court's award of attorney's fees de novo."  *Stone v. Thompson*, 428 S.C. 79, 92, 833 S.E.2d 266, 272 (2019).

We must first consider the following factors to determine the propriety of an award of attorney's fees focusing on each party's: (1) ability to pay their own fees; (2) beneficial results obtained; (3) respective financial conditions; and (4) standard of living as affected by these fees.  *See E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) (*E.D.M.* factors).

Once the family court has determined that an award is proper, it must consider the following factors to determine the reasonableness of the amount: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services."  *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991) (*Glasscock* factors).

A. Uncooperativeness

Father first argues that the award of attorney's fees was inequitable because the family court failed to substantiate its finding that he was uncooperative or hindered the litigation. The uncooperative or litigious nature of a party is an additional consideration that our courts have raised to complement the *E.D.M.* and *Glasscock* factors. *See Bodkin*, 388 S.C. at 223, 694 S.E.2d at 241. ("[W]hen parties fail to cooperate and their behavior prolongs proceedings, this is a basis for holding them responsible for attorney's fees.").

In the present case, the family court never made a finding that Father was uncooperative or conducted himself in a manner that impeded litigation. Thus, the family court did not err in failing to substantiate a finding that it never made.

B. Financial Considerations

Second, Father argues that the family court failed to make a proper determination of the parties' respective gross incomes when deciding who would bear the brunt of Mother's attorney's fees. Specifically, Father suggests that the family court failed to consider the child support and alimony Mother received when calculating her gross income.

Financial considerations relate to the following *E.D.M.* factors: the parties' respective financial conditions, the parties' ability to pay for their attorney's fees, and the effect of the fee on the parties' standard of living. In respect to these factors, the family court found that Father was in a superior financial position, Mother was largely unable to pay her attorney's fees, and the impact of the attorney's fees would be financially devastating to Mother's standard of living. In making these determinations, the court considered each party's gross monthly income, debt, and the alimony and child support paid from Father to Mother.[4] The court also noted that the alimony payments would expire on November 7, 2024. We find the family court properly weighed the parties' financial considerations in allocating the attorney's fees. Therefore, the family court did not err in awarding Father to pay Mother's attorney's fees.[5]

---

[4] The family court found that Father earns $13,900.00 in gross monthly income, whereas Mother earns $2,314.00. Mother also receives $2,500.00 per month in taxable alimony and $850.00 per month in child support. The court also considered Mother's and Father's respective debt obligations.

[5] The family court also considered the second *E.D.M.* factor, beneficial results obtained. The court found that Mother was wholly successful in defending this

## III. GAL Fees

In respect to the GAL fees, Father contends that (1) the fees exceeded the statutory cap and (2) the family court misallocated the fee amounts between the parties.

### A. Statutory Cap

As an initial matter, we believe Father's argument that the GAL fees exceeded the statutory cap is not preserved for appeal because it was never raised to and ruled upon at the family court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal[] but must have been raised to and ruled upon by the [family court] to be preserved for appellate review.").

### B. Fee Allocation

"An award of attorney's fees will be reversed where the substantive results achieved by counsel are reversed on appeal." *Camburn v. Smith*, 355 S.C. 574, 581, 586 S.E.2d 565, 568 (2003). "Similarly, where guardian ad litem fees are incurred in an action that is found meritless on appeal, the party instigating the action should pay." *Id.*

In determining the proper allocation of the GAL fees, our courts have considered the parties' respective financial positions, the extent of the parties' communications with the GAL, and whether the action was brought in good faith. *See Klein*, 427 S.C. at 89, 828 S.E.2d at 781 (finding the wife should bear the majority of GAL fees when considering the parties' incomes and the wife's extensive correspondence with the GAL); *see also Shirley*, 342 S.C. at 341, 536 S.E.2d at 436 (considering a party's legitimate reasons for bringing an action when allocating the GAL fees).

Here, we find that Father has failed to demonstrate a substantial change in circumstances sufficient to warrant a modification of the custody decree. Therefore, as the instigating party, he must pay the GAL fees. *See Camburn*, 355 S.C. at 581,

---

action and but for Father bringing this action, Mother would not have incurred any fees and costs.

586 S.E.2d 568 ("[W]here guardian ad litem fees are incurred in an action that is found meritless on appeal, the party instigating the action should pay.").

## CONCLUSION

Accordingly, the family court's order is

**AFFIRMED.**

**WILLIAMS, C.J., and VERDIN, J., concur.**