**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Rose Pandola and John Wallace, IV, Defendants,

Of whom John Wallace, IV is the Appellant.

In the interests of minors under the age of eighteen.

Appellate Case No. 2024-001640

———————————

Appeal From Charleston County
Michèle Patrão Forsythe, Family Court Judge

———————————

Unpublished Opinion No. 2025-UP-290
Submitted August 4, 2025 – Filed August 5, 2025

———————————

**AFFIRMED**

———————————

Kindle Kay Johnson, of K. Johnson Law Firm, LLC, of Rock Hill, for Appellant.

William Evan Reynolds, of Kingstree, for Respondent.

Joshua Keith Roten, of Summerville; and Mary Christine Hardee, of South Carolina Department of Children's Advocacy, of Columbia, both for the Guardian ad Litem.

_____

**PER CURIAM:**  John Wallace, IV (Father) appeals a family court order terminating his parental rights to his two minor children (Children).  On appeal, Father argues the family court erred in (1) denying his motion to dismiss the termination of parental rights (TPR) action based on the failure to hold the hearing within statutorily-prescribed timelines, (2) allowing the admission of drug test results without expert testimony or a proper chain of custody, (3) finding clear and convincing evidence supported TPR based on two statutory grounds, and (4) finding TPR was in Children's best interests.  We affirm.

"On appeal from the family court, the appellate court reviews factual and legal issues de novo."  *Klein v. Barrett*, 427 S.C. 74, 79, 828 S.E.2d 773, 776 (Ct. App. 2019).  Under the de novo standard of review, this court may make its own findings of fact; however, we continue to recognize the superior position of the family court to assess witness credibility.  *Stoney v. Stoney*, 422 S.C. 593, 595, 813 S.E.2d 486, 487 (2018).  Moreover, de novo review does not relieve the appellant of the burden of showing that the preponderance of the evidence is against the family court's findings.  *Id.*

1.  We find Father failed to show the family court abused its discretion in denying his motion to dismiss because he benefitted from any extension in time.  *See Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2 (explaining appellate courts review the family court's procedural and evidentiary rulings for an abuse of the family court's discretion); S.C. Code Ann. § 63-7-2530(C) (Supp. 2024) ("The hearing on the petition to terminate parental rights must be held within [120] days of the date the [TPR] petition is filed."); *id.* (stating the family court may, at its discretion, grant a continuance that would result in the hearing being held more than 120 days after the filing of the petition); *id.* ("If a continuance is granted, the court must issue a written order scheduling the case for trial on a date and time certain.").  In April 2023, the family court approved a permanent plan of TPR and adoption and allowed the Department of Social Services (DSS) to forego reasonable efforts at reunifying Father and Children based on Father's lack of progress in completing his treatment services.  DSS filed its petition for TPR in July 2023, and in October 2023, the family court continued the TPR hearing in order to appoint legal counsel or a guardian ad litem (GAL).  The October order directed the hearing to be placed on the November 2023 trial docket, but the TPR

hearing did not occur until April 2024. However, in January 2024, the family court issued a permanency planning order changing Father's permanent plan to TPR and adoption concurrent with reunification. Although the family court noted Father had "almost" completed his placement plan, it required him to submit to further drug testing before the court would consider returning Children to Father's care. The evidence presented at the TPR hearing showed Father did not comply with the two DSS referrals for hair follicle drug tests between the January 2024 order and the April 2024 TPR hearing. Because the extended time period benefitted Father, we find no abuse of discretion in denying his motion. *See Davis v. Davis*, 372 S.C. 64, 87, 641 S.E.2d 446, 458 (Ct. App. 2006) ("An error not shown to be prejudicial does not constitute grounds for reversal." (quoting *Brown v. Pearson*, 326 S.C. 409, 417, 483 S.E.2d 477, 481 (Ct. App. 1997))).

2. We find any error in the admission of Father's challenged drug test results was harmless because the documents were cumulative to other evidence establishing he tested positive for drugs and failed to submit to additional drug tests. *See Bojilov v. Bojilov*, 425 S.C. 161, 178, 819 S.E.2d 791, 800 (Ct. App. 2018) ("When evidence is merely cumulative to other evidence, its admission is harmless and does not constitute reversible error."). Although Father objected to the admission of three hair follicle drug test results, prior to their admission, the DSS case worker testified without objection that as of April 2023, Father was not producing negative drug tests despite being enrolled in substance abuse treatment. Moreover, the case worker testified, also without objection, that Father tested positive for drugs on hair follicle tests in August and December 2023 and failed to comply with referrals for hair follicle tests in January and March 2024. Because the evidence showed Father tested positive for drugs and failed to submit to drug tests even without considering the results at issue, we find any error was harmless.

3. We find clear and convincing evidence showed that at the time of the TPR hearing, Children had been in foster care for at least fifteen of the most recent twenty-two months. *See* S.C. Code Ann. § 63-7-2570 (Supp. 2024) (explaining the family court may order TPR upon finding a statutory TPR ground is met and TPR is in the child's best interest); *S.C. Dep't of Soc. Servs. v. Smith*, 423 S.C. 60, 76, 814 S.E.2d 148, 156 (2018) ("The grounds for TPR must be proven by clear and convincing evidence."); § 63-7-2570(8) (providing a statutory ground for TPR is met when a "child has been in foster care . . . for fifteen of the most recent twenty-two months"). The undisputed testimony established Children were removed on December 13, 2021—just shy of twenty-eight months before the April 2024 TPR hearing. Moreover, we find the delay in reunification was caused by Father's failure to demonstrate he could provide a safe, drug-free environment for

Children rather than any dilatory action by DSS.  *See S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 336, 741 S.E.2d 739, 746 (2013) ("[S]ection 63-7-2570(8) may not be used to sever parental rights based solely on the fact that the child has spent fifteen of the past twenty-two months in foster care.  The family court must find . . . the delay in reunification of the family unit is attributable not to mistakes by the government, but to the parent's inability to provide an environment where the child will be nourished and protected.").  Although Father did not receive a placement plan until nine months after Children were removed, the DSS case worker testified Father was still not producing negative drug screens as of April 2023—six months after he was ordered to complete his placement plan and fifteen months after Children were removed.  At that time, the family court also ordered a permanent plan of TPR and adoption and authorized DSS to forego reasonable efforts at reunifying Father and Children due to his lack of progress.  The case worker also testified that Father tested positive for drugs as recently as December 2023.  Although the case worker acknowledged Father's substance abuse treatment provider indicated hair follicle drug tests could remain positive for an extended period of time, the case worker testified the provider that conducted DSS's drug screens indicated the tests covered only a span of ninety days.  Further, in January 2024, the family court ordered Father to submit to hair, oral, urine, and blood drug tests after the hearing and to continue to submit to random drug screens for the duration of the case.  The case worker testified that despite this order, Father failed to comply with referrals for drug screens in January and March 2024.  She stated Father informed her the day of the TPR hearing that he had taken a hair screen and showed her the results; however, she had seen no other drug screen results indicating he submitted to drug tests pursuant to the family court's order.  Further, the case worker testified Father told her he had complied with the January 2024 referral, but the testing provider had no documentation indicating Father had submitted to the drug test.  Accordingly, we find clear and convincing evidence supports this statutory ground.[1]

4.  We find TPR is in Children's best interests.  *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) ("In a [TPR] case, the best interests of the children are the paramount consideration."); *Sarah W.*, 402 S.C. at 343, 741 S.E.2d at 749-50. ("Appellate courts must consider the child's

---

[1] To the extent the family court found Father's failure to remedy the conditions that caused Children's removal was an independent ground for TPR, we decline to address this ground.  *See S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 613, 582 S.E.2d 419, 425 (2003) (declining to address a statutory ground for TPR after concluding clear and convincing evidence supported another statutory ground).

perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."); S.C. Code Ann. § 63-7-2620 (2010) ("The interests of the child shall prevail if the child's interest and the parental rights conflict.").

Initially, we acknowledge the evidence showed Father exercised regular visitation with Children and paid child support; Children wanted to return to his home; and Child 1, who was fourteen years old at the time of the TPR hearing, did not want to be adopted. *See* S.C. Code Ann. § 63-7-2510 (2010) ("The purpose of this article is to establish procedures for the reasonable and compassionate [TPR] where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption by persons who will provide a suitable home environment and the love and care necessary for a happy, healthful, and productive life."); S.C. Code Ann. § 63-9-310(A)(1) (2010) (explaining an adoptee over fourteen years old must consent to the adoption "except where the court finds that the adoptee does not have the mental capacity to give consent, or that the best interests of the adoptee are served by not requiring consent"). However, as we have laid out above, the evidence is also clear that Father had not provided a safe, drug-free home to which Children could return, despite having well over two years to demonstrate his abstention from drug use. The GAL believed Child 1, in particular, was "suffering" from not knowing "what[ was] going to happen from day-to-day." Moreover, at the time of the TPR hearing, Father still faced pending criminal charges, and his bond conditions related to the charges prohibited unsupervised contact with Children. The GAL, who had served in the role since Children were removed, recommended TPR.

The GAL testified Child 1 had changed foster placements shortly before the TPR hearing when her former foster family left the country due to military service, but she stated Child 1 had adapted well to her new foster home, attended therapy, and was "working really hard" and behaving well at school. Further, at the post-trial motion hearing, the case worker informed the family court that a teacher from the previous school year was interested in having Child 1 placed with her, and Child 1 was open to remaining in the teacher's home on a long-term basis if she could not return to the care of Father or Rose Pandola (Mother; collectively, Parents). Thus, even if Child 1 were not ultimately adopted, TPR could give her a level of permanency that would be difficult to achieve by preserving Father's parental rights without the possibility of returning to his home.

As to Child 2, who was thirteen years old at the time of the TPR hearing, testimony showed he was open to adoption, and DSS had identified a pre-adoptive placement for him. The GAL testified Child 2 had "blossomed" in foster care and had

expressed he was happy with his foster parent and would be "fine to be adopted by" him. At the post-trial motion hearing, the case worker informed the family court that Child 2 remained willing to be adopted by his foster family if he was not able to return to Parents' home, and Parents' counsel confirmed Child 2's foster family was considering adoption. Thus, we find TPR is in Children's best interests.

**AFFIRMED.**[2]

**MCDONALD, HEWITT, and TURNER, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.